NUMBER 13-04-575-CR

                         COURT OF APPEALS

               THIRTEENTH DISTRICT OF TEXAS

                  CORPUS CHRISTI - EDINBURG

 

 

 

CHRIS McBRIDE,                                                     Appellant,

                                           v.

THE STATE OF TEXAS,                                              Appellee.

 

 

                  On appeal from the 130th District
Court

                         of Matagorda County, Texas.

 

 

 

                    MEMORANDUM OPINION [1]

 

          Before Chief Justice Valdez and Justices Yañez
and Castillo

                        Memorandum Opinion by Justice Castillo

 








A jury
convicted appellant Chris McBride of murder[2] and
assessed punishment at thirty years confinement in the Institutional Division
of the Texas Department of Criminal Justice. 
By two points of error, McBride asserts that the trial court reversibly
erred by denying him a requested instruction on his justification defenses of
self defense and necessity.[3]   We affirm.

I.  BACKGROUND

McBride
testified, and essentially claimed,  that
he killed Harrison in self defense and shot Harrison out of necessity.[4]   Events leading to Harrison's death unfolded
as follows.








McBride had
filed for divorce in February 2004, and a mutual restraining order was pending
with respect to McBride and his wife, "Melissa."  The two were living apart.  Their two minor children were living with
McBride.  Melissa admittedly had an
ongoing extra-marital affair with Harrison, spanning approximately three years.  On Saturday, April 10, 2004, Melissa advised
McBride that she was taking Allison,  the
younger of their two children, to a beach near Sargent, approximately twenty
minutes away from their homestead in Sweeny. 
As it was Easter weekend, McBride was to join them for the day.  However, work delayed him.[5]  Ultimately, he headed toward Sargent and met
Melissa, who was apparently returning to Sweeny.  They stopped and Allison joined McBride while
Melissa went to a convenience store to buy insect repellant.  McBride observed that Allison lacked
undergarments and clothes.[6]       

Meanwhile,
at the convenience store, Melissa had telephoned Harrison.  After waiting what he construed as a
considerable time for the short trip, McBride proceeded to look for Melissa.[7]  En route, he saw her at a six-room
motel.  The family had twice before
stayed at the six-room complex.[8]  Perplexed that the weather and the child's
need for clothes might suggest a return to Sweeny, McBride confronted Melissa
about the motel room she had reserved and, because it was Easter weekend,
"let it go."  In room 3,
Melissa proceeded to shower while McBride fed Allison.  The motel manager appeared at the door with a
telephone in hand, indicating the caller requested to speak to Melissa.  McBride recognized the number on the caller
ID as Harrison's mother's telephone number. 
While handing the telephone to Melissa, McBride admittedly struck her
with it.  An argument ensued.  Melissa left the room and drove off but
returned in short term.  While the
argument continued, McBride said he would leave to get the child's clothes from
Sweeny and left.  Melissa stayed.  She discovered she locked her keys in her car
and called Harrison to request he take her the extra set from her mother's
house.   

While at his
residence, McBride pondered for approximately an hour and a half over the
events in Sargent and decided not to return.[9]  He cleaned a shotgun he usually carried with
him.  He loaded the shotgun with
birdshot.  He remembered that the child
needed clothes and decided to return to Sargent.  He gathered the child's clothes, jackets for
the three of them, his loaded rifle, a shotgun, and ammunition,[10] and loaded
them in the truck.  Before leaving town,
he drove by Harrison's house to see if he was home.  Harrison's car was there.  McBride assumed he was home and proceeded to
Sargent.








In Sargent,
McBride saw Harrison's mother's car at the motel.  The time was approximately 2:00 a.m.   After he parked, McBride put one live round
in the chamber of the shotgun, took the child's clothes, and concealed the
shotgun with a jacket.  Hearing
footsteps, Melissa looked out the window and saw McBride approaching.  She saw the jacket draped over his shoulder
and assumed he was armed.  She threw
Harrison's gun to Harrison.[11]  At room 3, McBride tried to open the door and
it was locked.  He knocked, and Melissa
told him to leave.  He kicked the door,
but it did not open.  The jury heard that
McBride yelled profanities at Harrison, telling him to step outside and that he
was going to kill him. Harrison responded with what McBride termed
"something sarcastic."[12]   McBride broke a panel of the window next to
the door with his weapon.  Using his 9
millimeter handgun, Harrison fired at McBride from inside the room.  The bullet broke what McBride said was the
bottom window pane.  McBride testified
the glass cut his face.  McBride returned
fire.[13]  Harrison fired again.  McBride shot again.  Whether Harrison fired a third shot is
disputed.[14]  McBride fired a third shot.  McBride described for the jury the location
of Harrison by the flash created when Harrison fired his weapon.  In his statement to police, McBride described
Harrison's movement in the apartment as first near the door to the room, then
in the middle of the room, and then at the back of the room toward the
bathroom.[15]  Evidence showed that the room was small.  

Harrison
died at the scene as the result of injuries sustained from the shotgun blast to
his neck and chest.[16]   Before collapsing, Harrison told Melissa
that he was hit and he was out of bullets.[17]  McBride fled the scene.  He testified that he left when Harrison
stopped shooting.  He stated he did not
retreat because he feared Harrison would shoot him if McBride made his way down
the flight of stairs to the truck.  He
testified he was unaware that Harrison died and was out of bullets.  McBride testified that he was in "a
defensive state of mind."

McBride eluded
capture for several hours and ultimately surrendered when surrounded by law
enforcement.  When arrested, he was told
Harrison was dead.  McBride stated he was
glad.  In his statement to police,
McBride stated that Melissa was "just as guilty" as he was for
killing Harrison.  Some time later,
McBride testified that he believed that there might have been a plan afoot to
kill him.  He testified that one of
Harrison's bullets lodged in a stud in the wall of the motel room would have
hit his chest if not blocked.  McBride
further testified that the other bullets were directed at him.  He stated that, when returning fire, he aimed
toward the direction of the blast from Harrison's gun.   








The jury
heard the history of acrimony between the two men.  The jury also heard that both men were armed
well before the date in question and, by various means, this was made known to
each.  The two exchanged numerous verbal
threats.  McBride testified that Harrison
had, on one or more occasions, pointed a pistol at him.  McBride testified that he considered Harrison
dangerous, stating that it could be assumed that someone armed with a gun is
going to use it.  A prior physical
altercation between them resulted in an aggravated assault charge against
McBride, which remained pending at the time of trial.[18]  Both regularly used methamphetamines. Both
physically assaulted Melissa.[19]

McBride objected
to the charge because it lacked instructions on self-defense and
necessity.  He requested an instruction
on self-defense and necessity.  The trial
court overruled the objections.  The jury
charge does not contain the instructions. 
It does contain a lesser-included charge of manslaughter which, by its
verdict, the jury rejected.    

II.  JURY CHARGE ERROR








 A defendant has the right to an instruction on
a defensive issue raised by the evidence, whether that evidence is weak or
strong, unimpeached or contradicted, and regardless of what the trial court may
believe about the credibility of the defense.  Hamel v. State, 916 S.W.2d 491, 493 (Tex.
Crim. App. 1996); see also Bowen v. State, 162 S.W.3d 226, 229 (Tex.
Crim. App. 2005); Granger
v. State, 3 S.W.3d 36, 38
(Tex. Crim. App. 1999);; Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim.
App. 1993) (en banc).  A defendant's
testimony alone may suffice to raise a defensive issue requiring submission of
an instruction on a defensive issue.  Pennington
v. State, 54 S.W.3d 852, 856 (Tex. App.BFort
Worth 2001, pet. ref'd) (citing Hayes v. State, 728 S.W.2d 804, 807
(Tex. Crim. App. 1987)). We view the evidence submitted in support of the
defense in the light most favorable to the defendant.  Id. 


Our first duty in analyzing a jury charge
issue is to determine whether error exists. 
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)
(en banc) (citing Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App.
1996)).  Then, if we find error, we
analyze that error for harm.  Middleton, 125 S.W.3d at 453; see Posey
v. State, 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998) (en banc). 

A. 
Preservation of Error

By his two points of error, McBride
maintains that the trial court reversibly erred by denying instructions on his
defenses of justification.  The State
responds that McBride's general objection to the jury charge is insufficient to
preserve error. 








To preserve error relating to the charge,
a defendant must either object to the charge or make a request for a special
charge on the issue in question.  Tex. Code Crim. Proc. Ann. arts.
36.14, 36.15 (Vernon Supp. 2005); Vasquez v. State, 919 S.W.2d 433, 435
(Tex. Crim. App. 1996) (en banc); Garza v. State, 55 S.W.3d 74, 77 (Tex.
App.BCorpus Christi 2001, no pet.)  Under article 36.14, the accused is required
to object and obtain an adverse ruling to preserve any error.  Vasquez, 919 S.W.2d at 435.  However, under article 36.15, if the accused
requests a special charge no objection is required to preserve error.  Guzman v. State, 567 S.W.2d 188, 190 (Tex.
Crim. App. 1978).  All that is necessary
under article 36.15 is that the requested charge be in writing or dictated to
the court reporter.  The request need
only be sufficient to call the trial court's attention to the omission in the
court's charge.  Stone v. State,
703 S.W.2d 652, 655 (Tex. Crim. App. 1986) (en banc).  A defendant preserves error for appellate
review if the request is sufficiently specific to put the trial court on notice
of an omission or error in the charge.  Brazelton
v. State, 947 S.W.2d 644, 647 (Tex. App.BFort
Worth 1997, no pet.).

In this case, McBride timely objected to
the jury charge and requested, on the record, a charge with respect to his
justification defenses of self-defense and necessity.  The trial court overruled the objection on the
record.  McBride received an adverse
ruling to his request, and no further objection was necessary. See Vasquez,
919 S.W.2d at 435; James v. State, 772 S.W.2d 84, 112 (Tex. Crim. App.
1989) (en banc); see Garza, 55 S.W.3d at 77.  We conclude that McBride properly preserved
error.  See also Tex. R. App. P. 33.1.  We turn to McBride's claims on appeal.

B. 
Self-defense








By his first point of error, McBride
maintains that he was entitled to a self-defense instruction because McBride,
while armed himself, considered Harrison dangerous.  He asserts he knew Harrison carried a gun,
and Harrison had previously threatened McBride verbally and pointed a gun at
him.  McBride further asserts that his testimony
demonstrates (1) Harrison was the first to use deadly force, (2) the deadly
force was directed at McBride, (3) McBride feared for his safety and fired
back, (4) he met force with force, (5) he escaped when Harrison stopped
shooting, and (5) retreat was not an option because the shooting occurred
within seconds and his sole exit was on an open porch and down the stairs.  

1. 
The Law

A defendant is entitled to an instruction
on the law of self‑defense if there is some evidence that he intended to
use force against another and he did use force, but he did so only because he
reasonably believed it was necessary to prevent the other's use of unlawful
force.   Ex parte Nailor, 149
S.W.3d 125, 132 (Tex. Crim. App. 2004). 
The accused must show that he relied on the statutory law of self‑defense.  See id.; Riddle v. State, 888 S.W.2d 1, 6
(Tex. Crim. App. 1994) (en banc); Hayes v. State, 728 S.W.2d 804, 807
(Tex. Crim. App. 1987); Smith v. State, 676 S.W.2d 584, 586‑87
(Tex. Crim. App. 1984) (en banc); Holmes v. State, 830 S.W.2d 263, 265
(Tex. App.BTexarkana 1992, no pet.).   However, if the evidence, viewed in the
light most favorable to the defendant, does not establish self‑defense,
the defendant is not entitled to an instruction on the issue.  Nailor, 149 S.W.3d at 132.








In determining whether an accused is
entitled to a self‑defense charge, the credibility of the evidence or
whether it is controverted or conflicts with other evidence should not be
considered.   See Woodfox v. State,
742 S.W.2d 408, 409 (Tex. Crim. App. 1987) (en banc); Smith, 676 S.W.2d
at 587 (stating that it makes no difference whether the self‑defense
evidence is "strong, weak, unimpeached, or contradicted.").  The defendant's testimony alone may be
sufficient to raise a defensive theory requiring a charge.   Warren v. State, 565 S.W.2d 931, 934
(Tex. Crim. App. 1978).  The weight of
the evidence supporting a self‑defense charge is not material to this
determination.  Woodfox, 742
S.W.2d at 410.  An instruction on self‑defense
is not required, if the evidence, viewed in the light most favorable to the
defendant, does not establish a case of self‑defense.   Dyson v. State, 672 S.W.2d 460, 463
(Tex. Crim. App. 1984) (en banc) (citing Barree v. State, 621 S.W.2d 776
(Tex. Crim. App. 1981); Cerda v. State, 557 S.W.2d 954, 958 (Tex. Crim.
App. 1977); Dominguez v. State, 506 S.W.2d 880, 882 (Tex. Crim. App.
1974)); see Holmes, 830 S.W.2d at 265. 

2. 
Deadly Force








A component of self-defense is the use of
deadly force.  Deadly force is a force
intended to cause or is capable of causing, as used or intended to be used,
serious bodily injury or death.  Tex. Pen. Code Ann. ' 9.01 (Vernon 2003). A person is justified
in using force against another when and to the degree he reasonably believes
the force is immediately necessary to protect himself against the other's use
or attempted use of unlawful force.  Tex. Pen. Code Ann. ' 9.31(a) (Vernon 2003); see also Ward
v. State, 143 S.W.3d 271, 272 (Tex. App.BWaco
2004, pet. ref'd).  Special rules apply
to the use of deadly force.  See Tex.
Pen. Code Ann. ' 9.31(d) (Vernon 2003).  A person is justified in using deadly force
against another if: (1) he would be justified in using force against the other
under section 9.31; (2) a reasonable person in the actor's situation would not
have retreated; and (3) when and to the degree he reasonably believes the
deadly force is immediately necessary to protect himself against the other's
use or attempted use of deadly force.  Tex. Pen. Code Ann. ' 9.32(a) (Vernon 2003); see also Tex. Pen. Code Ann. ' 9.31(d) (Vernon 2003).  "Reasonable belief" is defined as
"a belief that would be held by an ordinary and prudent man in the same
circumstances as the actor."  Tex. Pen. Code Ann. ' 1.07(a)(42) (Vernon Supp. 2005); see
Fielder v. State, 756 S.W.2d 309, 319‑20 (Tex. Crim. App. 1988).  In determining whether a defendant had a
reasonable belief that action was immediately necessary for his protection, the
facts and the circumstances must be judged from the viewpoint of the defendant
alone.  Juarez v. State, 886
S.W.2d 511, 514 (Tex. App.BHouston [1st Dist.] 1994, pet.
ref'd).  The question of whether the
conduct was justifiable is not to be viewed in the light of later events, but
by what the defendant reasonably believed at the time.  See id., Fitzgerald v. State,
782 S.W.2d 876, 885 (Tex. Crim. App. 1990) (en banc).








The Texas Penal Code justification for
self‑defense focuses on the existence of some necessity, the
circumstances under which the force was used, the degree of force used, and the
type of conduct against which the force was used.  Kelley v. State, 968 S.W.2d 395, 399 (Tex.
App.BTyler 1998, no pet.).  The amount of force used must be in
proportion to the force encountered.  Id.  Deadly force is not immediately necessary if
a reasonable person in the position of the defendant would use some available
nondeadly method of self‑defense.  Id.  In such circumstances, a defendant's use of
deadly force would not be justified.  Id.  (citing Tex.
Pen. Code Ann. ' 9.32(a)(3) (Vernon 2003)); see Frank
v. State, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985); Juarez, 886
S.W.2d at 514. 

3. 
Application

The issue before us is not the truth of
McBride's testimony, as that is for the jury.  Dyson, 672 S.W.2d at 463.  Rather, if such testimony or other evidence,
viewed in a light favorable to McBride, does not establish a case of self‑defense,
an instruction is not required.  See
id.   

McBride had the right to defend against a
reasonable appearance and apprehension of apparent danger to the same extent as
against actual danger.  Dyson,  672 S.W.2d at 463.  However, use of deadly force is justified
only when retreat is unreasonable.   See
Frank, 688 S.W.2d at 868.  With
respect to the requirement of retreat before using deadly force, viewed from
McBride's standpoint, we hold McBride to a standard of reasonable conduct based
on his reasonable fear of death or serious bodily injury.  See Juarez, 886 S.W.2d at 514.  The standard for the trial court to use in
determining the reasonableness of retreat before submitting the question to the
jury is whether the defendant had a clear and unbridled avenue to escape to
which he had easy access.  See Dyson,
672 S.W.2d at 464.       








Even assuming that McBride was reasonable
when confronted with deadly force, we find no evidence that a reasonable person
in McBride's circumstances would not have retreated before the gunfight.  Rather, we conclude that McBride could have,
but refused to, leave the child's clothes outside the motel room without
further contact with Harrison, who he considered a threat, armed, and
dangerous.  When McBride knocked, he was requested
to leave but did not.  All events
considered in the light most favorable to McBride, Harrison shot after McBride
attempted to kick in the door, shouted obscenities and a threat, and broke a
window pane with his gun.  Importantly,
McBride's conduct occurred with confessed knowledge that his child was in the
motel room. 

In sum, McBride knew he was unwelcome and
said he considered himself to be in danger; yet, he stayed.  He admitted he was armed.  He demanded a confrontation with Harrison
before any shooting occurred.  McBride
said he was shot at before he shot, yet he stayed; he did not testify to any
attempt to retreat until after Harrison stopped shooting.  While we recognize that a defendant's
testimony alone may be sufficient to support a justification defense,  see Hayes, 728 S.W.2d at 807, it must
actually raise the defensive issue before an instruction is proper, see
Granger, 3 S.W.3d at 38.  We conclude
that, viewed in the light most favorable to McBride, the evidence demonstrates
that McBride anticipated the event and prepared himself to respond to the
occasion.  We further conclude that the
evidence does not establish a case of self-defense.  Thus, a self-defense instruction was not
required.  We overrule McBride's first
point of error.  








C. 
Necessity

By his second point of error, McBride
asserts that the trial court reversibly erred by denying a necessity
instruction.  He maintains that, when
Harrison shot first, McBride was required out of necessity to shoot back to
defend himself, to prevent being killed or seriously injured.  The State responds that the necessity defense
does not apply because a legislative purpose to exclude it exists in the
retreat requirement of section 9.32.    

1. 
The Law








Self-defense and necessity are independent
defenses.[20]  Bowen, 162 S.W.3d at 229.  Necessity is a statutory defense that
exonerates a person's otherwise illegal conduct.  Stefanoff v. State, 78 S.W.3d 496, 500
(Tex. App.BAustin 2002, pet. ref'd).  Conduct that would otherwise be criminal is
justified by "necessity" if: 
(1) the actor reasonably believes the conduct is immediately necessary
to avoid imminent harm; (2) the desirability and urgency of avoiding the harm
clearly outweighs, under ordinary standards of reasonableness, the harm sought
to be prevented by the law proscribing the conduct; and (3) a legislative
purpose to exclude the justification claimed for the conduct does not otherwise
plainly appear.  Tex. Pen. Code Ann. ' 9.22 (Vernon 2003).  In addition, a judicially imposed predicate
for submission of necessity as a defense requires that a defendant first admit
commission of the offense before offering necessity as a justification.   See
Ford v. State, 112 S.W.3d 788, 793 (Tex. App.BHouston
[14th Dist.] 2003, no pet.).  The plain
language of section 9.22 indicates that the defense of necessity may be
applicable in every case unless specifically excluded by the legislature.  Bowen, 162 S.W.3d at 229.  To determine whether a legislative purpose
exists to exclude the defense, we focus on the statute defining the charged
offense.  Id.  In this case, we would focus on section
19.02(b)(1)  of the Texas Penal
Code.  See Tex. Pen. Code Ann. _19.02(b)(1) (Vernon 2003).  However, a defendant is entitled to an
instruction on necessity if the evidence at trial raised each element of the
defense.  See Stefanoff, 78 S.W.3d
at 499.  If the evidence is such that a
rational juror could accept it as sufficient to prove a defensive element, then
it is said to raise that element.  Id.  On appeal, evidence in support of a defensive
issue is viewed in the light most favorable to the defense. Id.  The credibility, source, or strength of the
evidence is immaterial to our determination of whether the evidence raises a
defense.  Id. 

Section 9.22(1) of the Texas Penal Code
requires the defendant to bring forward evidence that he reasonably believed
the prohibited conduct was immediately necessary to avoid imminent harm.  Stefanoff, 78 S.W.3d at 500 (citing Johnson
v. State, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983)). "Harm"
means anything reasonably regarded as loss, disadvantage, or injury, including
harm to another person in whose welfare the person affected is interested.  Tex.
Pen. Code Ann. ' 1.07(a)(25) (Vernon Supp. 2005);
Stefanoff, 78 S.W.3d at 500. 
"Imminent" means something that is immediate, something that
is going to happen now.  Id. at
501.  Reading these definitions together,
imminent harm contemplates a reaction to a circumstance that must be the result
of a split‑second decision made without time to consider the law.  Id. 
More than a generalized fear of harm is required to raise the issue of
imminent harm.  Id.  

2. 
Application








McBride maintains that, had he not
returned fire, he, not Harrison, would have been killed.  Evidence showed Harrison shot at McBride,
after McBride refused to leave, threatened to kill Harrison, and attempted
entry into the motel room by kicking the door. 
The attempted entry escalated when McBride, while armed, broke a window
pane with his weapon.  McBride did not
testify that he broke the pane with his weapon in an effort to deter deadly
force.  He acted after Melissa requested
McBride leave and after Harrison spoke with sarcasm but did not use deadly
force.  If McBride feared for his life by
Harrison's statement, he had the opportunity to retreat.  He did not. 
Rather, he told Harrison he was going to kill him.  That threat was followed by McBride's first
entry into the room when he broke the window pane by using a deadly weapon.[21]  That act began the gunfight.[22]  Harrison responded with deadly force.  The degree of force McBride used, kicking the
door and then breaking the window pane with his shotgun, to reciprocate against
Harrison's sarcasm was more than what was immediately necessary to protect
himself.  Indeed, at that point there was
no deadly force to protect against.  Breaking
the window pane with his gun demonstrates that McBride had no need to protect
against deadly force.  We cannot conclude
that a rational juror could accept the evidence as sufficient to prove that
immediacy arose when Harrison responded with gunfire, after McBride steadfastly
and deliberately maintained his presence outside the room.  








While McBride's testimony alone may be
sufficient to support a necessity defense, the evidence must raise the
defense.  See Hayes, 728 S.W.2d at
807; Granger, 3 S.W.3d at 38.  The
imminent harm component necessitates an immediate, non‑deliberative
action made without hesitation or thought of the legal consequence.  See Stefanoff, 78 S.W.3d at 501.  Even assuming that Harrison was the
aggressor, McBride adduced no evidence to show the immediacy of the need to
protect against deadly force.  See Tex. Pen. Code Ann. _ 9.32(a)(3) (Vernon 2003).  Although the jury heard that the gunfight
lasted seventeen seconds, there is no evidence with respect to the time McBride
spent at the door before it erupted. 
Given the history of discord between the two, McBride placed himself
squarely in a volatile situation.  Even
assuming further that McBride proved imminent harm, the immediacy component
required that he establish facts indicating a reasonable belief that the criminal
conduct was immediately necessary to avoid the imminent harm.  Tex.
Pen. Code Ann. '' 9.22(1), 9.32(a)(3); see Stefanoff,
78 S.W.3d at 501.  Viewed in the light
most favorable to McBride, the circumstances in which McBride placed himself,
as a whole, do not demonstrate the justification defense of necessity.  The evidence does not demonstrate the sort of
"split‑second" action contemplated in section 9.22(1).  We conclude that a necessity instruction was
not required.[23]  We overrule McBride's second point of error. 

III. 
CONCLUSION

We conclude that instructions on
self-defense and necessity were not required on this record.  Consequently, the trial court did not err in
submitting a charge to the jury without them. 
We affirm.

ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.3(b).

 

Memorandum opinion delivered and filed

this the 13th day of July, 2006.











[1] See Tex. R. App. P. 47.1, 47.4.  





[2] The indictment alleged
that, on or about April 11, 2004, McBride intentionally and knowingly caused
the death of Bradly Harrison by shooting him with a firearm.  See Tex.
Pen. Code Ann. __19.02, 19.02(b)(1)
(Vernon 2003).  A person acts
intentionally with respect to the result of his conduct when it is his
conscious objective or desire to cause the result.  Tex.
Pen. Code Ann. ' 6.03(a) (Vernon
2003).  A person acts knowingly with
respect to the result of his conduct when he is aware his conduct is reasonably
certain to cause the result.  Id.
at ' 6.03(b).  Murder is a "result of conduct"
offense.   Cook v. State, 884
S.W.2d 485, 490 (Tex. Crim. App. 1994).  
Murder is the voluntary or intentional killing of a person without
justification or excuse.   See Becks
v. State, 254 S.W.2d 396, 398 (1953). The word "voluntarily"
carries with it the "intention" to commit the offense charged.   Id.  





[3] See Tex. Pen. Code Ann.__ 9.02,
9.22, 9.31, 9.32 (Vernon 2003). 





[4]
McBride's videotaped and written statements were admitted in evidence.  





[5] McBride owned a vehicle
body repair shop and a tow truck business. 
He was delayed by two calls, one involving a locked  vehicle. 
Feeling guilty, he said, for the delay in arriving at the beach, he
declined a third call.   





[6] Testimony showed the
child had soiled her clothes and Melissa did not have a change of clothes for
her.  





[7] Melissa testified she
called Harrison from the convenience store. 
She further testified that he was angry with her for being at the beach.





[8] Photographs in evidence
show the motel is on stilts with a walkway 
in front of the six rooms and a staircase at either end.  The manager and one owner occupied two of the
rooms.  





[9] He
testified that "the whole motel thing didn't make any sense."  





[10]
Evidence showed he had eight to ten boxes of ammunition.





[11] She testified that the
gun was on the bed between them.  She
stated that Harrison was mad because he did not want to be there.





[12] The
record is silent with respect to what McBride heard Harrison say.





[13] McBride testified that,
through the blinds and curtains he saw Melissa carrying Allison into the
bathroom.  





[14] Located near him,
Harrison's weapon was empty.  Two spent
shells from his weapon were retrieved. 
McBride theorized that evidence of the third shot was the bullet damage
to the lattice panel bordering the walkway. 
He further theorized that, because at least five people were in the room
immediately after the shooting, the third spent shell from Harrison's weapon
was lost or removed.  





[15]
McBride's statement to police states:

I tried to open the door and it was locked and then I tried to kick in
the door and Melissa told me to just leave. 
That was par for the course.  Then
Brad said something sarcastic . . . and I knocked out the window with the
barrel of the shotgun and I saw the shot come through the window.  I felt it and I heard it.  I do not know what kinda  gun it was. 
I shot in the window with the shotgun. 
I shot once angled over towards the door.  I saw everyone moving around.  I cannot say for sure but I believe Melissa
took the baby to the bathroom.  Then Brad
shot again and I shot again at him towards the middle of the room.  Then it looked like Brad was headed towards
the bathroom and shot at me again.  I
shot at him again as he was going towards the bathroom.  





[16] The
jury heard that the shooting lasted seventeen seconds.  





[17] At some point, Melissa
carried Allison into the bathroom and called 911. The 911 tape was played for
the jury and admitted in evidence.  A
State's expert testified that he could not discern the number of gunshots
audible on the tape.  We have reviewed
the tape and the number of gunshots is not discernable.  





[18] The jury heard that
McBride pulled Melissa out of Harrison's car on a morning after the two spent
the night together, pulled a knife to stave off Harrison, and later rammed
Harrison's vacant vehicle.  





[19] When McBride admitted he
struck Melissa with the telephone on the date in question, he also testified
that he left a mark where Harrison had previously fractured her eye socket.





[20] The Texas Court of
Criminal Appeals has recognized the independence of separate defenses by
holding that a defendant is entitled to the submission of every defensive issue
raised by the evidence, even if the defense may be inconsistent with other  defenses. 
Bowen v. State, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005).  In Bowen, the Court reaffirmed this
principle by holding that self-defense's statutorily imposed restrictions do
not foreclose necessity's availability.  Id.
at 230.





[21] A firearm is a deadly
weapon.  See Tex. Pen. Code Ann. _1.07(17) (Vernon Supp. 2005).





[22] We note that a person
who would otherwise be entitled to act in self‑defense forfeits the right
to defend himself if he provoked the other's use or attempted use of unlawful
force.  Tex.
Pen. Code Ann. ' 9.31(b)(4) (Vernon
2003). A charge on provoking the difficulty is required when the evidence shows
(1) that the defendant did some act or used some words which provoked the
attack on him, (2) that such act or words were reasonably calculated to provoke
the attack, and (3) that the act was done or the words were used for the
purpose and with the intent that the defendant would have a pretext for
inflicting harm upon the other.  Smith
v. State, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998) (en banc).  We need not and do not decide whether McBride
provoked Harrison because it is neither raised nor dispositive.  See Tex.
R. App. P. 38.9, 47.1.

 





[23] We are mindful that, had
the jury received a justification instruction, 
the jury would be free to interpret the evidence in such a way that
would support a finding of self‑defense, or a finding of necessity but not
self‑defense, or a finding of neither self‑defense nor
necessity.  See  Bowen, 162 S.W.3d at 229. The trial
court's failure to instruct the jury on either defense precluded the
interpretation with respect to the evidence in this case.  However, McBride has the burden to prove harm
by the trial court's failure to instruct the jury. See Abdnor v. State,
871 S.W.2d 726, 732 (Tex. Crim. App. 1994) (en banc) (holding that the burden
lies with the appellant to persuade the reviewing court that the error was
harmful.)  If the appellant is unable to
do so, the error will not result in reversal. Id.  McBride has not demonstrated harm.