JOHN ANTHONY BRUNO V. STATE

No. 28,508. October 31, 1956.

*John Cutler,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The complaint and information under which appellant was tried were in three counts, charging simple assault; aggravated

assault in which serious bodily injuries were inflicted, and aggravated assault committed with premeditated design and by the use of means calculated to inflict great bodily injury.

All counts were submitted, and the jury returned a verdict finding appellant guilty of aggravated assault and assessing his punishment at a fine of $500.

It is contended that the evidence is insufficient to show that the injuries inflicted were serious bodily injuries or to show that the assault was committed by the use of means calculated to inflict great bodily injury and with premeditated design.

In both counts charging aggravated assault it is alleged that the assault was committed with the hands, fists and feet.

J. D. Thomas, the injured party, testified that on the night of December 31, 1955, he was at a place called Club 66, in Harris County, and had been drinking.

Appellant approached Thomas, said "Hello" and inquired of Thomas whether he remembered him, and Thomas said "No."

Appellant walked away but came back and "asked me if I still remembered him and I said 'No.' "

"A.  He said he used to work for me when I was in the Texas Prison — said I used to guard him, which I did. He worked under me in the Texas Prison System. I was a guard.

"Q.  What was his capacity in the Texas Prison System? A.  He was a prisoner.

"Mr. Cutler: We object to that.

"Court: Overrule it."

At this time in the testimony the jury was retired and appellant moved for mistrial because of the testimony to the effect that appellant had been a prisoner in the penitentiary. The exception to the overruling of the motion for mistrial will be hereafter discussed.

To resume with the testimony of the prosecuting witness, he further testified that following the conversation with ap-

pellant: "I went and got a table and sat down and forgot about him. I just put him out of my mind."

A few minutes after midnight the prosecuting witness Thomas was asked to leave.

The assault occurred a few minutes after midnight as Thomas left the club. It was described by Thomas as follows: "I was coming out of the building and started around the corner to the car and got just at the corner and he was sitting on a car fender to my left. I started to pass him and I seen him. * * * I tried to run over this corner, trying to get out of his way, and he came up and socked me.

"Q. What did he sock you with? A. All I knew was his fist.

"Q. After he hit you, what happened to you? A. After he had me down, I saw the toe of his shoe coming toward my eye.

"Q. Do you know how many times you were hit and kicked? A. No, sir; I don't. * * *

"Q. Did the defendant kick you? A. When you don't see nothing, I don't guess you know. I just saw the shoe coming toward me; and about that time, I got a blow. * * *

"Q. While the defendant was doing this, did he say anything to you? A. Never had he said a word.

"Q. What was your position in relation to the ground when you saw this shoe coming toward your face? Were you standing up, or on the ground? A. Laying down. I couldn't say how I was laying. I know I wasn't standing up.

"Q. You were not standing up? A. No, sir."

No motive for the assault appears in the record unless it be the consequence of the prior relationship between the appellant as an inmate of the penitentiary and the prosecuting witness as his guard.

Under the facts we are unable to agree that the admission of evidence to the effect that appellant was an ex-convict required that a mistrial be ordered.

Evidence which is pertinent and tends to prove the offense alleged or the motive is not rendered inadmissible because it also shows or tends to show that the defendant had been convicted of a collateral crime. Authorities are collated under Evidence, Criminal Cases, in 18 Texas Jur., Secs. 34 and 37. Prior relationship between the accused and the assaulted party is ordinarily pertinent and admissible.

Appellant's assault upon Thomas immediately upon his leaving the building is not explained upon any theory other than that of assault with premeditated design by a former convict upon one who had exercised authority over him as a guard. The jury was not without basis for concluding that appellant, after meeting Thomas in the club and recognizing him as his former guard, formed the intent to assault him and awaited his coming out of the building for that purpose.

As a result of the injuries inflicted upon him in the assault, Thomas was taken to the hospital where he remained for three or four days under treatment of Dr. George F. Wortham, Jr.

Dr. Wortham testified that he treated Thomas for "lacerations, which is a cut, on the lower eyelid on the left, and multiple bruises and abrasions, and cuts in the face, and chest. * * * he also had a laceration under the lining of his left eye." He described the wounds as serious bodily injuries.

On cross-examination Dr. Wortham stated that he did not mean that Thomas was in danger of death, but that the injuries were serious bodily injuries since it could cause loss of vision in one eye. "He had a laceration in the white part of his eye, which could cause blindness" but the eye healed and he did not lose his vision.

Police Officer Bullock described the wounds inflicted upon Thomas. He testified: "He had a hole in his upper cheek under one eye, and what appeared to be a small hole in the forehead and around the left eyebrow, and lacerations on his nose."

"Q. You saw a cut under his eye? A. Yes, sir; a severe gash.

"Q. How deep was it? A. I didn't measure it.

"Q. How wide was it? A. It was laid open till you could put your thumb in there.

"Q.   Stick your whole thumb in his eye? A.   It was gapped open over an inch."

He testified that the wounds on Thomas at the time appeared to him to be serious bodily injuries.

Officer Bullock, after relating that he had been a police officer for eight years had seen many people who had been kicked by other people wearing shoes and hit with fists in a manner such as to cause injuries such as he found on the injured party Thomas, expressed the opinion that such hitting and kicking was a means calculated to inflict great bodily injury.

While there was testimony to the contrary, we are not prepared to say that there is not sufficient evidence from which the jury could reasonably conclude and find that appellant assaulted Thomas by kicking him as well as by striking him with his fists, and that the assault was made with premeditated design and with means calculated to inflict great bodily injury.

The verdict may be applied to the count of the complaint and information which is supported by the evidence. McKinley v. State, 152 Tex. Cr. Rep. 167, 211 S.W. 2d 745, 748. It follows that we need not determine whether the evidence shows also that the injuries inflicted were serious bodily injuries.

The judgment is affirmed.