In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00125-CR


______________________________




CHARLES EDWARD KIZER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fifth Judicial District Court


Cass County, Texas


Trial Court No. 2005F00047




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 In late February 2005, a family argument quickly escalated into violence at the Cass County
mobile home of Charles Edward Kizer. Not long after Kizer's sister-in-law, Karen Jones, cut up his
hot links, Kizer cut up her face and kicked her repeatedly. As a result, Karen sustained serious
injuries including damage to her vision, and Kizer was ultimately convicted (1) for aggravated assault
with a deadly weapon. On appeal, Kizer claims the trial court erred in refusing Kizer's requested jury
instructions on (1) self-defense, (2) defense of property, and (3) necessity. We overrule Kizer's
points of error and affirm the trial court's judgment.

 The evening in question, Kizer and members of his family drove to Avinger, where they
intended to eat dinner. Kizer, recovering from recent surgeries to his back and to remove a testicle,
rode with his nephew, Robert Naquin. On the way to the restaurant, Kizer decided against attending
the dinner when he saw who he thought was his nephew, Jerry Don Jones, and "Jerry Don" failed
to wave at Kizer. Naquin described Kizer as "very upset" at the news that Jerry Don was apparently
meeting the family for dinner. Kizer returned home and lay on the couch, while the rest of the group
went to dinner, (2) shopped, and returned to Kizer's mobile home with Kizer's requested hot links.

 Karen, wife of Kizer's brother Jerry Lee Jones, prepared a plate of hot links for Kizer and
gave it to him. According to Karen and Naquin, Kizer started telling Jerry Lee that Kizer had seen
Jerry Lee's son, Jerry Don, on the way to the restaurant. Jerry Lee said Kizer was mistaken, because
Jerry Don had been in Mount Pleasant. Karen testified that Kizer did not care for Jerry Don; she said
that, for more than a year, Kizer had been critical of how Karen and Jerry Lee dealt with Jerry Don. 
Karen and Naquin both said that, in the course of this conversation, Kizer suddenly threw his plate
to the ground, smashing it, and began calling for Jerry Lee to "get up," apparently an invitation to
fight. Kizer, though, testified that he and Jerry Lee were arguing over whether it had been Jerry Don
that Kizer had seen. Kizer said Jerry Lee "got to raising his voice" and it irritated Kizer "worse and
worse . . . because [he] was hurting" from his recent surgeries. Kizer testified that he got up from
the couch once to confront Jerry Lee but that, when Jerry Lee stopped his comments, Kizer returned
to the couch. Kizer said Jerry Lee then provoked him again, and Kizer said, "That second time I got
up I wasn't going to stop." 

 Kizer said he was following Jerry Lee into the kitchen when Karen pushed Kizer, and then,
when he tried to go around her, slapped Kizer's face. Kizer claimed he then "slapped her to the
floor," and she kicked him in the testicle. This is when Kizer said he "lost it . . . . I ain't got but one
testicle, and you can imagine how bad it hurt." Kizer did not remember pulling out his pocketknife,
but thought it had happened after he said Karen kicked him--it was "just reflexes, I guess." Kizer
admitted taking Valium, Hydrocodone, and Lomotil for his post-surgery pain. 

 In contrast, Karen and Naquin testified that Kizer, unprovoked, began yelling at Jerry Lee
to "come on," Naquin said Kizer knocked Karen out of her chair to the ground. Karen said that she
and Jerry Lee were trying to leave Kizer's house when Kizer pulled his knife and pushed Karen to
the ground. Karen said Kizer pulled the knife out of his pocket "[r]ight after he jumped up." Karen
said that, after she fell to the floor, Kizer kicked her "about 15 or 20 times." During this period,
Kizer was waving his knife, jabbing it at Jerry Lee, and telling Karen she was going to die and he
was going to put out her eye. In describing her injuries sustained during Kizer's attack, Karen
explained she had been blind in her right eye her entire life, the result of a premature birth, and that
Kizer's attack caused significant injuries to her left eye. Karen said she suffered bruises on her back,
hips, and legs, as well as the cuts to her face. She received seventeen stitches to the cuts around her
eye and suffered a partial loss of vision. As a result of the injuries she sustained at the hand of
Kizer, Karen said, "I can't hardly see out of my [left] eye. Everything is blurry, and I'm blind in my
right eye." Karen acknowledged kicking Kizer, from her position on the floor, in an attempt to
escape from his attack. 

 When asked if he had had problems with his family before, Kizer answered only regarding
in childhood. Karen said that, before this attack, she had never had problems with Kizer. 

(1) Self-Defense Justification Is Not Raised by the Evidence

 Kizer first complains of the trial court's refusal to include in the jury charge an instruction
on self-defense. A defendant is entitled to an instruction on self-defense if evidence raises the issue,
regardless of whether that evidence is weak or strong, unimpeached or contradicted, and regardless
of what the trial court may or may not think about the credibility of the defense. Hamel v. State, 916
S.W.2d 491, 493 (Tex. Crim. App. 1996); Hill v. State, 99 S.W.3d 248, 250 (Tex. App.--Fort Worth
2003, pet. ref'd).

 A reviewing court must view the evidence or testimony in a light most favorable to the
appellant. Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984). But the instruction is not
required if the testimony or other evidence viewed in the light most favorable to the appellant does
not establish self-defense. See Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999) (standard
of review for defensive instructions). The defendant's testimony alone may be sufficient to raise a
defensive theory requiring a charge. Dyson, 672 S.W.2d at 463.

 While the requested instruction Kizer presented to the trial court described the use of
ordinary force under Section 9.31(a) of the Texas Penal Code, Kizer exhibited deadly force when
he knifed Karen in the face--force which would require a different instruction under Section 9.32,
an instruction Kizer did not request. See Tex. Penal Code Ann. §§ 9.31(a), 9.32 (Vernon 2003).

 Deadly force is "force that is intended or known by the actor to cause, or in the manner of its
use or intended use is capable of causing, death or serious bodily injury." Tex. Penal Code Ann.
§ 9.01(3) (Vernon 2003). Karen required seventeen stitches and suffered a loss of vision in an eye. 
Such injuries qualify as serious bodily injury. See Bruno v. State, 163 Tex. Crim. 540, 295 S.W.2d
211, 213 (1956) (where testimony detailed eye and facial lacerations and threat to vision, finding of
serious bodily injury justified).

 We look at the end result of the act, and if facts are such that the victim dies or is seriously
injured, then, by definition, the force used was deadly; and, in such an event, the evidence does not
justify use of a nondeadly force instruction under Section 9.31(a) of the Texas Penal Code. Ferrel
v. State, 55 S.W.3d 586, 591-92 (Tex. Crim. App. 2001) (weapon, full beer bottle, caused death;
Ferrel used deadly force); Denman v. State, 193 S.W.3d 129, 135 (Tex. App.--Houston [1st Dist.]
2006, pet. ref'd) (complainant in persistent vegetative state, therefore suffered "serious bodily injury";
appellant necessarily used deadly force and was not entitled to application paragraph as to nondeadly
force defense) (citing Tex. Penal Code Ann. § 1.07(a)(46) (Vernon Supp. 2006) (defining "serious
bodily injury" as bodily injury that creates a substantial risk of . . . any protracted loss or impairment
of the function of any bodily member or organ"). When the evidence fails to raise a defensive issue,
the trial court commits no error in refusing a requested instruction. Kunkle v. State, 771 S.W.2d 435,
444 (Tex. Crim. App. 1986). Because Kizer used deadly force, (3) yet requested only an ordinary force
instruction, there was no error.

 We overrule the first point of error.


(2) Defense of Property Justification Is Not Raised by the Evidence

 Kizer also asked the trial court to instruct the jury on a justification based on his defense of
property. For such an instruction, there must have been some evidence that Kizer was in lawful
possession of the land in question and that he reasonably believed force was immediately necessary
to prevent or stop another person from trespassing on that land or unlawfully interfering with Kizer's
property. See Tex. Penal Code Ann. § 9.41 (Vernon 2003).

 There was no dispute Kizer owned, or at least was in control of, the mobile home where the
assault occurred. Kizer admitted he had invited the family to his house. They honored his request
to bring him dinner after they had dined out, and Karen cut up his hot links and served them to him. 
Kizer testified that his brother was arguing with him, and Kizer told Jerry Lee to "leave him the hell
alone." There was no evidence before the trial court that Jerry Lee or Karen were asked to leave,
were trespassing, or had exceeded the scope of their invitation. In fact, there is evidence that Karen
and Jerry Lee were trying to leave the premises when the altercation occurred.

 We incorporate our earlier discussion regarding Kizer's use of deadly force. Here, again,
Kizer requested an instruction justifying the use of ordinary force in protection of property, under
Section 9.41 of the Texas Penal Code, not deadly force, under Section 9.42. Again, because he used
deadly force, he was not entitled to an ordinary force instruction.

 We overrule this point of error. 



(3) Necessity Justification Is Not Raised by the Evidence

 The trial court also refused to include in the jury charge language on the defense of necessity. 
In order to be entitled to a jury instruction on the defense of necessity, a defendant is required to
present evidence that he or she reasonably believed a specific harm was imminent. See Tex. Penal
Code Ann. § 9.22(1) (Vernon 2003); Johnson v. State, 650 S.W.2d 414, 416 (Tex. Crim. App.
1983); Brazelton v. State, 947 S.W.2d 644, 648 (Tex. App.--Fort Worth 1997, no pet.). Harm is
"imminent" when there is an emergency situation and it is "immediately necessary" to avoid that
harm. Jackson v. State, 50 S.W.3d 579, 595 (Tex. App.--Fort Worth 2001, pet. ref'd). A defendant
claiming the defense of necessity must present evidence that he or she reasonably believed their
criminal conduct was immediately necessary to avoid the imminent harm. See Tex. Penal Code
Ann. § 9.22(1).

 Here, Kizer's version of events was that, after Karen struck him and he "slapped her to the
floor," she kicked him in the testicle. Again, Kizer offered no testimony to suggest that he had a
reasonable belief that imminent harm was upon him or anyone else. Even if Karen had kicked him
as he described, there was no evidence that he believed she was poised to inflict more harm. 
Without such evidence, the defense of necessity was not raised and the trial court did not err in
refusing the instruction. We overrule this point of error.



 We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 13, 2007

Date Decided: June 12, 2007


Do Not Publish

1. The jury assessed his punishment at four years' confinement and a $500.00 fine.
2. The group ultimately went to Mount Pleasant for their activities, since Kizer had been the
only one who had wanted to eat in Avinger. 
3. Kizer did not ask for an instruction on the use of deadly force. He would not have been
entitled to that instruction, though, because there was no evidence anyone threatened him with
deadly force. See Tex. Penal Code Ann. § 9.32. Kizer testified that Karen struck him before he
struck her. He did not deny kicking her repeatedly or cutting her face with his pocketknife. He said
he pulled his knife on her only after she kicked him in the testicle; he said that it was reflex that
caused him to pull out the knife and that he did not specifically remember pulling it. Like the trial
court, we find no evidence that Kizer had a reasonable belief that he needed to resort to deadly force
in response to Karen's pushing and slapping him or even kicking him once in the groin area.


alse" Name="Colorful Shading Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00213-CR

                                                ______________________________

 

 

                                        ARNOLD NELSON,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 202nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 09F0313-202

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            With a
search warrant in hand, SWAT officers, accompanying officers from the Bi-State
Narcotics Task Force, knocked on the door of a suspected drug house owned by
Adrian Jackson in Bowie County and announced their presence.  When no one responded, a battering ram was
used to gain entry into the residence. 
Once officers were inside, they found Arnold Nelson on or near the
living room couch, six feet away from a toilet paper rollcontaining 6.35
grams of crack cocaine worth approximately $700.00 to $800.00on the living
room floor.  Officers also found an
unidentified male in a back bedroom and an unidentified female in a bathroom attempting
to dispose of a small amount of crack cocaine in the toilet. 

            A jury
convicted Nelson of possessing cocaine in an amount of four grams or more but
less than 200 grams.  Pursuant to a plea
of true to an enhancement allegation, Nelson was assessed a $10,000.00 fine
and was sentenced to fifty years incarceration in the Texas Department of Criminal
JusticeInstitutional Division.  Nelsons
sole point of error on appeal questions the legal and factual sufficiency of
the evidence supporting his conviction. 
We affirm the trial courts judgment.

            We no longer
can address a factual-insufficiency claim. 
In a very recent plurality opinion, the Texas Court of Criminal Appeals
found no meaningful distinction between the Jackson v. Virginia legal-sufficiency standard and the Clewis[1]
factual-sufficiency standard, and these two standards have become indistinguishable.  Brooks
v. State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6,
2010) (4-1-4 decision).  Further, a
proper application of the Jackson v.
Virginia legal-sufficiency standard is as exacting a standard as any
factual-sufficiency standard.  See id. at *11.  In a concurring opinion, Judge Cochran
pointed out that the United States Supreme Court has rejected a legal
sufficiency test that requires a finding that no evidence supports the
verdict because it affords inadequate protection against potential
misapplication of the reasonable doubt standard in criminal cases.  Id.
at *16 (Cochran, J., concurring).  Rather
than meeting a mere no evidence test, legal sufficiency is judged not by the
quantity of evidence, but by the quality of the evidence and the level of
certainty it engenders in the fact-finders mind.  Id.
at *17.  Since the Texas Court of
Criminal Appeals has now abolished factual-sufficiency review, we need not
address Nelsons challenge to the factual sufficiency of the evidence.

            In
evaluating the legal sufficiency of the evidence supporting Nelsons conviction,
we review the evidence, both properly and improperly admitted, in the light
most favorable to the jurys verdict to determine whether any rational jury
could have found the essential elements of possession of more than four but
less than 200 grams of cocaine beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Sanders
v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010,
pet. refd) (citing Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). 
Based on the Brooks pluralitys
description of the new application of legal sufficiency review under Jackson as rigorous and its statement
that the use by reviewing courts of the factual sufficiency standard in tandem
with the legal sufficiency standard may have skewed its proper application,
it appears that the Court is attempting to refocus the application of the legal
sufficiency standard from the quantity to the quality of the evidence
presented.  2010 WL 3894613, at *14.  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 31819).  

            The
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Under a hypothetically correct jury charge,
the State was required to prove that (1) Nelson exercised actual care,
control, and management[2]
over the cocaine; (2) in an amount of four grams or more but less than 200
grams; and (3) Nelson knew the substance in his possession was contraband.  Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Murphy v. State, 200 S.W.3d 753, 761 (Tex. App.Texarkana 2006), affd, 239 S.W.3d 791 (Tex. Crim. App. 2007);
see Tex.
Health & Safety Code Ann. § 481.115(a)(d) (Vernon 2010). 

            Before
the raid, neighbors had complained to police about drug activity at the
residence and the in-and-out traffic at the house.  The Bi-State Narcotics Task Force set up a
daily surveillance of the residence for approximately two weeks and used
confidential informants to obtain narcotics from various individuals inside the
residence.  Officers observed Nelson, who
lived on the same street a few blocks away, at Jacksons residence [p]retty
much on a daily basis.  

            On the day
of the raid, Nelsons older blue pickup truck was parked in the
driveway.  Once inside, officers found
things as we stated above, with Nelson in close proximity to a significant
quantity of crack cocaine.

            Mere
presence in the vicinity of a controlled substance is insufficient to show
knowing possession.  Evans v. State, 202 S.W.3d 158, 16162 (Tex. Crim. App. 2006).  When combined with other direct or
circumstantial evidence, however, proximity may be sufficient to establish
beyond a reasonable doubt a persons possession of a controlled substance.  Id.  Where, as here, Nelson was not in exclusive
possession of the place where the cocaine was found, additional independent
facts and circumstances must be developed in order to raise a reasonable
inference of Nelsons knowledge and control of the contraband.  Poindexter,
153 S.W.3d at 406.  This rule protects an
innocent bystander from conviction merely because of proximity to someone elses
drugs.  Evans, 202 S.W.3d at 16162.

            The evidence
linking Nelson to the cocaine must establish, to the requisite level of
confidence, that [Nelsons] connection with the drug was more than just
fortuitous. Poindexter, 153 S.W.3d
at 40506.  The following is a
nonexclusive list of links that have been found to be sufficient, either singly
or in combination, to establish a persons possession of contraband:  (1) the defendants presence when a search is
conducted; (2) whether the contraband was in plain view; (3) whether the
contraband was in close proximity to, or accessible by, the defendant; (4)
whether the place where the contraband was found was enclosed; (5) whether the
defendant was under the influence of narcotics when arrested; (6) whether the
defendant possessed other contraband or narcotics when arrested; (7) whether
the defendant made incriminating statements when arrested; (8) whether the
defendant attempted to flee; (9) whether the defendant made furtive gestures;
(10) whether there was an odor of contraband present at the scene;
(11) whether other contraband or drug paraphernalia were present; (12)
whether the defendant owned or had a right to possess the place where the
contraband was found; (13) whether the defendant was found with a large amount
of cash; (14) whether the defendant possessed weapons; and (15) whether conduct
of the defendant indicated a consciousness of guilt.  Evans,
202 S.W.3d at 162 n.12; Hargrove v. State,
211 S.W.3d 379, 38586 (Tex. App.San Antonio 2006, pet. refd).  The number of links is not dispositive;
rather, we look to the logical force of all of the evidence, direct and
circumstantial.  Evans, 202 S.W.3d at 162.

            Nelson was
present when the search warrant on Jacksons residence was executed.  His presence at the residence nearly every
day for a period of two weeks, even when Jackson was not present, would allow
the fact-finder to conclude he had a right to exercise care, custody, control,
or management over Jacksons residence for certain periods of time.  Although officers testified that the
contraband was not in plain view, it was within approximately six feet of
Nelson.  Nelson was the only person found
in the same room as the cocaine, and the drugs were in close proximity to, and
accessible by, him.  Other contraband was
present in the residence, although in the unidentified females presence.  The jury heard that the female was likely a
user and that Nelson was likely a dealer. 
Officers testified that the living room table contained a box of plastic
bags and a digital scale, items which, based on officers experience, were used
to deal drugs.  The unemployed Nelson was
found with $2,915.00 in his wallet, an amount consistent with dealing drugs,
though his mother claimed that $2,500.00 of that sum belonged to her.  No significant amount of money was found on
the unidentified male or female.  After
Nelsons arrest, a canine unit alerted on Nelsons truck, and another digital
scale was recovered.  This evidence
demonstrated links 1, 3, 6, 11, 12, and 13 from the above list.

            Although
officers did not claim there was an odor of contraband and Nelson was not under
the influence of drugs when arrested, did not possess weapons, and did not make
incriminating statements, furtive gestures, or any attempt to flee, we find the
evidence sufficient for a rational, fact-finding jury to have found beyond a
reasonable doubt that Nelson knowingly possessed cocaine in an amount of four
grams or more but less than 200 grams. 
We overrule Nelsons sole point of error.

            We affirm the trial courts
judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          November
10, 2010    

Date Decided:             November
12, 2010

 

Do Not Publish

 

 

 











[1]Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996).

 





[2]Possession
is defined as actual care, custody, control, or management.  Tex.
Penal Code Ann. § 1.07(a)(39) (Vernon Supp. 2010).