**James Julian DYSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 797–83.**

Court of Criminal Appeals of Texas, En Banc.

June 27, 1984.

Bruce Anton, Dallas, for appellant.

Henry Wade, Dist. Atty. and Donald G. Davis, Ken Carden & Randy Isenberg, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Trial was before the jury on appellant's plea of not guilty of attempted capital murder. The jury found appellant guilty of attempted voluntary manslaughter and assessed punishment at ten years. The conviction was affirmed by the Court of Appeals for the Second Supreme Judicial District in *Dyson v. State*, 654 S.W.2d 577 (Tex.App.—Fort Worth 1983). We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that the trial court did not err in denying appellant's requested charge on self-defense.

On November 12, 1981, Officer L.T. Wall and his partner responded to a domestic disturbance call at appellant's residence. Before the police were summoned, appellant had become enraged at his brother Cal at the brothers' grandparents' house and challenged him to a fight. Cal refused to fight appellant and appellant walked to an adjacent house where appellant, Cal, and their father lived, returning with a pistol, which he fired into the air. Appellant threatened Cal with the gun and Cal and

his grandmother took refuge in the grandparents' home. Appellant's father followed appellant to his grandparents' home but was chased by appellant back to his home. Appellant came back to his grandparents' yard with the gun and told his grandfather to send Cal out to fight. Appellant's grandmother called the police. Appellant returned to his home next door, on property which adjoined the grandparents' property in the backyard, where he hit his father several times and held him at gunpoint. Appellant's father testified that appellant was "shooting up the place," and shot the gun "out the rear of the house ... through the back door" in the direction of the grandparents' house. When the police arrived at the grandparents' house they were told by Cal that appellant was in the house next door. The officers walked through the backyard of the grandparents' house and into the yard of appellant's house. As they walked by the side of the house, they saw appellant through a window holding a gun in one hand and a telephone in the other. The officers, both in uniform, continued to the front of the house, walked up to the front door, and yelled "police." Although the front door was closed, it had a window in it through which the officers could see appellant and his father, whose arm was bleeding. Appellant responded by firing a shot through the front door window with his pistol, and the officers fled from the front door, taking refuge behind a car parked in the front yard. The officers again yelled "police," and several seconds later appellant fired a shotgun through the door, striking the car. Appellant appeared at the front door with a pistol and Officer Wall fired two shots at him which missed. Appellant then surrendered to the officers.

Appellant admitted firing the shots, but testified that he did not hear the police identify themselves and thought that the person standing at the front door was his brother Cal. He stated that he was on the telephone trying to reach his sister when he saw an "image or shadow at the door," and thinking that Cal was at the door, fired

his gun at the image and later fired his shotgun. He testified that he fired because he was scared and believed that Cal "was coming around to try to shoot me," since Cal had "access to all sorts of guns" at the grandfather's house, and because on a previous occasion Cal had "made a threat ... that one of us had to kill each other, or shoot each other." Appellant contends that his testimony is sufficient to have required the trial court to instruct the jury on the law of self-defense.

V.T.C.A. Penal Code, Sec. 9.31 provides in pertinent part:

"(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

"(b) The use of force against another is not justified:

"...

(4) if the actor provoked the other's use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor."

V.T.C.A. Penal Code, Sec. 9.32 provides in pertinent part:

"A person is justified in using deadly force against another:

"(1) if he would be justified in using force against the other under Section 9.31 of this code;

"(2) if a reasonable person in the actor's situation would not have retreated; and

"(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

"(A) to protect himself against the other's use or attempted use of unlawful deadly force; ..."

 It is well settled that if the evidence raises the issue of self-defense, the accused is entitled to have it submitted to the jury. *Semaire v. State,* 612 S.W.2d 528 (Tex.Cr.App.1980). A defendant is entitled upon timely request to an instruction on every affirmative defense raised by the evidence, "regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief." *Warren v. State,* 565 S.W.2d 931, 933, (Tex.Cr.App.1978); see also *Horne v. State,* 607 S.W.2d 556 (Tex.Cr.App.1980). The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Warren v. State,* supra; *Cain v. State,* 549 S.W.2d 707 (Tex.Cr.App. 1977).

 The issue before this Court is not the truth of appellant's testimony, for that is for the jury. "The issue before this Court is whether, if the testimony is believed, a case of self-defense has been made. *Rodriquez v. State,* 544 S.W.2d 382 (Tex.Cr.App.1976). If such testimony or other evidence viewed in a favorable light does not establish a case of self-defense, an instruction is not required. See e.g. *Barree v. State,* 621 S.W.2d 776 (Tex.Cr.App. 1981); *Cerda v. State,* 557 S.W.2d 954 (Tex. Cr.App.1977); *Dominguez v. State,* 506 S.W.2d 880 (Tex.Cr.App.1974).

 In the instant case, since appellant used deadly force, there must be some evidence to satisfy the requisites of Secs. 9.31 and 9.32, supra. Thus there must be some evidence to show that appellant reasonably believed that use of deadly force was im-

mediately necessary to protect himself against his brother's use or attempted use of unlawful force. That appellant was not in fact attacked by his brother is immaterial. A person has a right to defend from apparent danger to the same extent as he would had the danger been real; provided he acted upon a reasonable apprehension of danger as it appeared to him at the time. See *Jones v. State,* 544 S.W.2d 139 (Tex.Cr. App.1976).

In overruling appellant's contention, the Court of Appeals held that appellant was not entitled to a self-defense charge because he provoked the attack; because appellant "failed to adequately show that appellant could have reasonably believed that the shadowy figure in front of the house was a danger or threat to him which would justify the use of deadly force;" and because appellant failed to retreat from his home. *Dyson v. State,* supra, 654 S.W.2d at 579. We find that the first reason given by the Court of Appeals is sufficient to overrule appellant's contention and affirm. In doing so, we need not address appellant's contention that the other two reasons given by the Court of Appeals are incorrect.

 It is clear that under V.T.C.A. Penal Code, Sec. 9.31(b)(4), supra, force used in self-defense "is not justified ... if the actor provoked the other's use or attempted use of unlawful force." Id. Normally provocation is a fact issue, and is included in the court's charge on self-defense as a limitation on that defense. See McClung, Jury Charges for Texas Criminal Practice (1983), p. 330 et seq. In the instant case, however, provocation is not a fact issue since appellant, by his own testimony, established that he intended to provoke a confrontation with his brother.[1] Appellant

---

1. Appellant testified that on the day in question, his truck overheated. He asked Cal to take him to town to get parts, and then went to his grandfather to borrow money. Cal was told by his father to give appellant a ride to get the parts, and Cal drove his car to the grandparents' house, and told appellant in an upset manner, "come on, get in this car, we're going to go get the part to fix that damn truck right." Appellant testified that Cal's remark made him upset

and he hit the hood of Cal's car with his fist and kicked the side of the car. In response to his counsel's questions, appellant further testified:

"Q. Why did you do that ...?
"A. I don't know, I just—it all exploded right then, I hit the car, kicked the door, not the door, the fender. Anyway, *I wanted to fight him then and he wouldn't fight* or something, anyway, then that's whenever I walked off. I

testified that he "wanted to fight Cal," pointed a gun at him, and when Cal retreated, appellant yelled for Cal to come out and fight. Since appellant's admitted intent was to provoke Cal into a fight, appellant foreclosed his right of self-defense with respect to his brother. *Semaire v. State,* supra, relied upon by appellant, is distinguishable from the instant case. In *Semaire,* we rejected the State's contention that the evidence showed conclusively that the defendant provoked the confrontation and thus no charge on self-defense was required. We noted:

> " 'The use of force against another is not justified ... if the actor provoked the other's use or attempted use of unlawful force.' V.T.C.A., Penal Code, Section 9.31(b)(4) (in pertinent part). 'One who provokes a difficulty, *intending then to injure his opponent when the latter responds to the provocation,* is not justified in using force against his opponent when the latter responds. This is the common law, long recognized in Texas, and it is codified in Subsection (b)(4) ...' [emphasis in original] ... *Inasmuch as the appellant expressly denied any intent to harm his wife when he broke into the apartment, the evidence created only a question for the jury on provocation."* (emphasis supplied) 612 S.W.2d at 531.

As *Semaire* indicates, the appellant's intent is crucial in determining whether provocation has been established as a matter of law. Unlike the defendant in *Semaire,* appellant expressly stated that his intent was to fight his brother and thus, *no* "question for the jury on provocation" was created. Therefore, as a matter of law, appellant was not entitled to an instruction on self-defense, absent some evidence of abandonment. See Sec. 9.31(b)(4)(A), supra.

Appellant contends that the evidence shows that he "retreated from his brother and ran to the house" and thus shows that appellant abandoned the difficulty with his brother within the meaning of Sec. 9.31(b)(4)(A), supra. The undisputed evidence, however, shows that appellant did not retreat from his brother but rather that his brother retreated from him at gunpoint and sought refuge in the grandparents' house. Thereafter appellant stood in the yard with his gun calling for his brother to come out. Although appellant did return to his house after his brother refused to come out of the grandparents' house, he did not testify why he returned home. As noted above, appellant had gone home twice before, only to return with his gun each time. The two homes were on adjoining lots and upon returning home the third time, appellant continued to shoot his gun in the direction of the grandparents' house from inside his house. In addition, appellant continued in expressing his rage by beating on his father and holding him at gunpoint. Since appellant admittedly intended to provoke the confrontation, and since there is *no* evidence to indicate an

---

went up and got my gun and came back shooting it up in the air.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. How are you feeling when you went up there to get that gun, tell us how you felt, what was going on inside your head?
"A. I felt anger, rage, and I don't know, I felt like, you know, I just couldn't take no more of anything, and I wanted, you know, I wanted to sort of get out from his shadow.
"Q. Whose shadow?
"A. My brother's.
"Q. Well, what were you thinking when you went up to the house and got the gun?
"A. I really don't know what I was thinking at the time, I was shooting the gun up in the air, and I ran my brother and Grandmother off to my Grandfather's house.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Did you point [the gun] at anybody?
"A. I think I pointed it in the direction of my brother.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Who else did you say you ran off?
"A. Just my Grandmother and my brother at that time. My Dad followed me down there and I told him to go back home and he went back home. And then shortly after, shortly after that, I remember I was by the elm tree.
"Q. By the what?
"A. By the elm tree, and I was hollering at my Grandfather, because my Grandfather was out in the yard.
"Q. What were you hollering at him?
"A. I believe *I was telling him to send Cal out, because I wanted to fight Cal."*

abandonment, appellant was not entitled to an instruction on self-defense.

Appellant's contention is overruled.

The judgment of the Court of Appeals is affirmed.