COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JACK ALLEN GREY,                                          )

                                                                              )              
No.  08-03-00010-CR

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )            
County Court at Law #3

THE STATE OF TEXAS,                                     )

                                                                              )           
of Collin County, Texas

Appellee.                           )

                                                                              )              
(TC# 003-81793-00)

                                                                              )

 

 

O
P I N I O N

 

Jack Allen Grey
appeals his conviction for the offense of deadly conduct.  A jury found him guilty of the charged
offense, and the court sentenced him to 90 days=
in jail and asseseed a fine of $1,000. 
In his sole issue on appeal, Appellant argues that the trial court
committed reversible error in denying his request that an instruction on
defense of property be included in the jury charge.  We affirm.

In October 1999,
two employees of Rent-a-Center, Jeff Jeler and Danny Mathis, went to Appellant=s home. 
They were to pick up a set of bedroom furniture rented by Appellant=s stepdaughter, Veronica Schoeman, and
deliver a new set.  Ms. Schoeman resided
with Appellant.  At the time they were
making the exchange, Ms. Schoeman was ten days delinquent on her monthly payment.








When Mr. Jeler and
Mr. Mathis arrived at Appellant=s
home, they encountered Appellant who asked if they were there to exchange the
furniture.  Upon affirmation, he allowed
them to enter the house, and they proceeded to remove the bedroom set from Ms.
Schoeman=s
room.  At some point when they were
removing the old furniture from the room, both men noticed a rifle near the
front door in the living room.  They
disagreed as to the exact details of whether the door was originally open or
closed, and whether the rifle was propping the door open or leaning against the
door jam.  But they did agree that they
saw the rifle at the same time and it made them uncomfortable.

After the old
furniture had been removed, the men went back into the house to ask about Ms.
Schoeman=s
brother, Andy Schoeman, who was delinquent on his account and could not be
found.  Ms. Schoeman had referred her
brother to Rent-a-Center.  Appellant told
them that he had no information about the whereabouts of Andy Schoeman, and
that none of the property rented from Rent-a-Center was in his house, but told
them they were free to look around if they wished.   Mr. Mathis then told Appellant that without
more information about Andy Schoeman, and with Ms. Schoeman=s account being ten days past due, they
were unable to deliver the new bedroom set.








Appellant picked
up the rifle, cocked it, and pointed it at Mr. Mathis.  Then he told Mr. Mathis that the new
furniture would be delivered or Appellant would Astart
putting holes in things,@
beginning with the truck.  The rifle was
never pointed directly at Mr. Jeler, but Appellant held it for the remainder of
the time that the two men were in the house and Appellant would shift it from
one side to the other as they unloaded the new furniture.  Mr. Mathis then asked to speak with Appellant=s wife Marie, and Appellant called her
on the telephone.  Mr. Mathis spoke with
her, and then asked to call his manager which Appellant also allowed.  While he was on the phone with the manager,
Appellant told him to tell his manager that he had a 30.30 pointed at him.  The manager instructed Mr. Mathis to load the
new furniture into the house and get out. 
They followed his instructions and called the police on their return to
the Rent-a-Center in McKinney.

STANDARD OF REVIEW

To evaluate a jury
charge error, we follow a two-step process. 
First, we must determine whether an error has in fact been committed,
then whether the harm caused by the error is sufficient to warrant
reversal.  Abdnor v. State, 871
S.W.2d 726, 731-32 (Tex.Crim.App. 1994).

An error is
committed if the trial court fails to allow a properly requested instruction on
a defensive issue raised by the evidence. 
Granger v. State, 3 S.W.3d 36, 38 (Tex.Crim.App. 1999).  In determining whether the evidence raises a
defensive issue, we must consider all the evidence raised at trial regardless
of its strength, whether it is contradicted or what the trial court may think
about its credibility.  Musick v.
State, 862 S.W.2d 794, 797 (Tex.App.--El Paso 1993, pet. ref=d); Granger, 3 S.W.3d at 38.








Where the trial
court does commit an error, we must undertake a harm analysis.  If the error was raised as a timely objection
in the trial court, reversal is required if it causes merely some harm to the
accused.  Almanza v. State, 686
S.W.2d 157, 171 (Tex.Crim.App. 1984).  In
other words, this kind of error will be reversed unless the error is entirely
harmless.  Id.  However, if proper objection is not made at
trial, an error will be reversed only if it creates such an egregious harm that
the appellant has not had a fair and impartial trial.  Id. 
In both situations, the degree of harm is to be evaluated in light of
the entire jury charge, the weight of the evidence, and the arguments of
counsel.  Almanza, 686 S.W.2d at
171.

DISCUSSION

Texas law
authorizes the use of force in defense of a third person=s
property when the third person would be justified in using force himself.  See Tex.Pen.Code
Ann. ' 9.43
(Vernon 2003).  Force is justified upon
unlawful dispossession of an actor=s
property only if the actor reasonably believes the force is immediately
necessary to recover the property, and (1) the actor reasonably believes the
other had no claim of right to the property, or (2) the other accomplished the
dispossession using force, threat, or fraud against the actor.  See Tex.Pen.Code
Ann. ' 9.41(b).

A person is
justified in using deadly force against another to protect property (1) if he
is justified in using force under Section 9.41, (2) he reasonably believes the
deadly force is immediately necessary to prevent the other=s commission of or fleeing from the
commission of one of several enumerated crimes, and (3) he reasonably believes
that the property cannot be protected by any other means or any lesser degree
of force without exposing himself to a substantial risk of death or serious
bodily injury.  See Tex.Pen.Code Ann. ' 9.42.

Deadly force is
defined as force that is intended or known by the actor to cause, or in the
manner of its use or intended use is capable of causing, death or serious
bodily injury.  Tex.Pen.Code Ann. '
9.01(3).








To justify
inclusion of a defensive issue in the jury charge, there must be some evidence
to satisfy the requirements of the alleged offense.  See Dyson v. State, 672 S.W.2d 460,
463      (Tex.Crim.App. 1984).  If testimony of evidence viewed in a
favorable light does not establish a case of defense of property, then no
instruction is required.  See id.  To prove a defense using deadly force,
Appellant must first demonstrate that he was justified in using force under
Section 9.41.  See Tex.Pen.Code Ann. ' 9.42. 
We therefore look to any evidence that might support Appellant=s contention under that section.

Appellant must
show he believed his actions were necessary in order to recover the
furniture.  Refusal to instruct the jury
on defense of property is not error when there is no evidence of a defendant=s reasonable belief that force was
necessary to recover her property.  MacDonald
v. State, 761 S.W.2d 56, 61 (Tex.App.--Houston [14th Dist.] 1988, pet. ref=d). 
Upon reviewing the record, we find no mention whatsoever of a reasonable
belief that force was necessary.  Intent
or reasonable belief need not be established by direct testimony of the
defendant, but can be established instead by other=s
testimony about his words or actions that imply the requisite state of
mind.  Reed v. State, 703 S.W.2d
380, 385 (Tex.App.--Dallas 1986, writ ref=d).  However, Appellant did not testify as to
whether he believed his actions were necessary, or why he might have held such
a belief.  He called no witnesses, and
though such a belief may have been implied by his attorney in leading questions
propagated to State=s
witnesses, they also provided no support that one existed.  See Muniz v. State, 851 S.W.2d 238,
254-55 (Tex.Crim.App. 1993)(holding that leading questions implying coercion
defense expressly refuted by witnesses did not constitute affirmative evidence
sufficient to raise the defense).








Rather, the
testimony we do have about Appellant=s
words and actions suggests otherwise. 
Appellant could have explored several options to secure the return of
Ms. Schoeman=s
furniture before resorting to force.  In Smith
v. State, the Court found testimony showing that the defendant had tried to
avoid using violence sufficient to fulfill a similar reasonable belief
requirement that force was necessary in the self-defense statute.  Smith v. State, 676 S.W.2d 584, 586
(Tex.Crim.App. 1984).  In that case,
several people testified that the victim was the aggressor in the fight, that
he was holding a gun throughout the fight, and that the defendant tried to end
the fight saying AI don=t want to fight you.@ 
Id.  No such circumstance
existed in this case.  Both Mr. Mathis
and Mr. Jeler testified that Appellant retrieved his rifle and began to
threaten them with violence immediately after they told him that they were not
leaving the new furniture.  He did not
discuss other options with them, nor did he request to speak with a Rent-a-Center
supervisor, even when Mr. Mathis was already speaking with one on the
phone.  In other words, he made no effort
to try to avoid using violence.

In addition,
Appellant had no reason to believe he would have to use violence against
Mr. Mathis and Mr. Jeler to secure delivery of the furniture like in the Smith
case.  Neither was carrying a weapon nor
threatened him with violence at any point. 
They discussed the issue with him and gave him specific reasons why they
could not leave the new set.  It was Appellant
who escalated the disagreement into a potentially violent one by retrieving his
rifle and threatening to use it.  All of
the testimony supports the contention, not that Appellant reasonably believed
force was necessary, but rather that it was expedient or efficient, and
such a use of force is not sanctioned by the law.








Even if Appellant
did believe the force was necessary, he would still have to supply evidence
either that he reasonably believed Rent-a-Center had no claim of right to the
furniture, or that Mr. Mathis and Mr. Jeler dispossessed him by using force,
threat, or fraud.  Tex.Pen.Code Ann. ' 9.41. 
The record yields several pieces of testimony that speak vaguely to the
claim of right issue.  The most
significant is the effort by Appellant=s
attorney to establish that he believed the furniture rightfully belonged to his
stepdaughter.  Appellant=s attorney also placed substantial
emphasis on the fact that Appellant believed Mr. Mathis and Mr. Jeler took the
property wrongfully.  The problem with
this line of reasoning, however, is that it addresses the issue from the wrong
angle.  It is irrelevant whether an actor
who uses force to reclaim property believes he has the right to possess
it.  In order to justify the use of
force, the law requires that he reasonably believe the other has no
claim of right to it.  See Tex.Pen.Code Ann. ' 9.41. 
Given the nature of Rent-a-Center=s
business, and the familiarity Appellant=s
family had with the company, Appellant could not have reasonably believed that
the company, who was merely renting the property to Veronica Schoeman, had no
right to repossess it.  None of the
evidence presented as to this issue addresses Appellant=s
belief that Rent-a-Center had no claim to the property.  Therefore, the record lacks sufficient
evidence to warrant a jury instruction based on this element as well.








Alternatively,
Appellant could have introduced evidence that Mr. Mathis and Mr. Jeler removed
the furniture using force, fraud, or theft. 
However, he provided no evidence to this end.  In fact, evidence in the record suggests just
the opposite.  Mr. Mathis and Mr. Jeler
entered Appellant=s
property with his permission.  They
removed all of the old furniture without incident and with his consent.  There is nothing in the record to suggest
that they made any threats regarding the removal of the property, or that they
used any kind of force to do so.  The
record also lacks any evidence that they deceived Appellant as to their
identity, the purpose of their presence in his home, or the reasons for the
decision not to deliver the new bedroom set. 
With regard to theft specifically, Rent-a-Center actually owned the furniture
and was renting it to Ms. Schoeman. 
Mr. Mathis and Mr. Jeler cannot logically be accused of stealing
property on behalf of Rent-a-Center that the company already owns.  While Appellant may have believed Mr. Mathis
and Mr. Jeler were violating his stepdaughter=s
contract, he has no cause to claim the furniture was removed by fraud or
theft.  We find no evidence supporting
any of the elements of Section 9.41.

The above analysis
is sufficient to justify our affirmation of the trial court.  However, even if we did find evidence to
support the initial defense of property justification, Appellant would still be
unsuccessful on appeal because he produced no evidence meeting the elements of
Section 9.42, justifying his use of deadly force.  In order to justify his use of deadly force,
Appellant must raise evidence showing that he reasonably believed deadly force
was immediately necessary to interrupt or prevent the commission of one of the
enumerated crimes--arson, burglary, robbery, aggravated robbery, theft during
the nighttime, or criminal mischief during the nighttime.  See Tex.Pen.Code
Ann. ' 9.42.








The law allows for
defense of property if one of the crimes listed above is being committed, has
just been committed, or is in imminent danger of being committed, however none
of those scenarios apply here.  See
Phoenix v. State, 640 S.W.2d 306, 307 (Tex.Crim.App. 1982).  Mr. Mathis and Mr. Jeler were at Appellant=s household for a legitimate business
purpose-exchanging furniture they rented to a customer-and Appellant presented
no evidence suggesting otherwise.  Even
evaluating their actions in the light most favorable to Appellant, it is
impossible to conclude that Mr. Mathis and Mr. Jeler committed any crime.  They were representing a company that owned
the property, they were given permission to enter Appellant=s home, and they never attempted or
threatened to use violence. 
Additionally, the only suggestion of criminal behavior was made when
Appellant=s
attorney asked Mr. Mathis whether Appellant Ain
his mind@
reasonably believed a theft was occurring when they refused to bring in the new
furniture.  The trial court sustained the
State=s
objection to the question and Mr. Mathis was prohibited from answering, but
even if he had been allowed to answer, he could not have provided sufficient
evidence of a crime.  The statute
specifically requires theft during the nighttime, and since the delivery took
place during the middle of the day, Appellant=s
reasonable belief that a mere theft was being committed would not be sufficient
to warrant a jury instruction.

There is no need
to address the question of whether Appellant reasonably believed the property
could not be protected by any other means where there is no evidence to suggest
a crime was committed that would warrant deadly force.  See Phoenix, 640 S.W.2d at 307.  Appellant failed to raise the necessary
evidence of the elements of deadly force defense of property.  Issue One is overruled.

Accordingly, we
find that the trial court did not err in refusing the instruction on defense of
property.  The trial court=s judgment is affirmed.

 

 

 

July
22, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)