*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00487-CR

Jonathan Ray **DEPUE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-10950B
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed: December 30, 2009

AFFIRMED

Jonathan Ray Depue was charged with capital murder, and the State sought the death penalty.

A jury found Depue guilty, but at punishment answered the third special issue "no," resulting in a

life sentence without possibility of parole. Depue appeals, contending (1) the trial court erred in

refusing his request for a renunciation defense instruction in the jury charge, (2) the jury charge was

fundamentally flawed because it permitted the jury to convict him on proof different from, and less

than, that required to prove the allegation in the indictment, and (3) he was denied the right to a unanimous verdict because the charge allowed the jury to convict on two separate and distinct theories. We affirm the trial court's judgment.

## BACKGROUND

On September 29, 2006, Aleta Rhodes left her friend Susan Royston's house around 9:30 p.m. Ms. Rhodes was supposed to call Ms. Royston when she got home. When Ms. Royston failed to hear from Ms. Rhodes and could not reach her by phone, she went over to Ms. Rhodes's house, letting herself in with a set of keys she had been given by Ms. Rhodes. Ms. Royston found Ms. Rhodes, surrounded by blood, on the floor of the kitchen. Ms. Royston went to a neighbor's house and called 911.

EMS and officers from the San Antonio Police Department arrived at Ms. Rhodes's house. One of the officers noticed the back glass door of the house had been shattered and the house was in a state of disarray. The officer called her sergeant, evidence technicians, and night detectives. Detective John Doyle came to the house and was told Ms. Rhodes was dead and the house appeared to have been burglarized. Doyle noticed a computer was missing, and it appeared as if someone had attempted to pull a flat-screen television from the wall. Evidence technicians were able to obtain a print from the flat-screen television that was later found to match a known print from Depue. It was later determined Ms. Rhodes died from a gunshot wound to the head.

At trial, Depue's brother Eric testified for the State. Eric, a convicted felon at the age of fifteen, and on parole at the time of the events that are the subject of this appeal, struck a deal with the State by which he agreed to plead guilty to the aggravated robbery of Ms. Rhodes and testify against his brother. In exchange, the State agreed that possible punishment for Eric would be capped

at life imprisonment, meaning Eric would receive a sentence anywhere from fifteen years to life. Eric testified that on September 29, 2009, he was living at his aunt's house along with Depue and two cousins, Joseph and Daniel Montoya. The four men borrowed a car and Daniel was carrying a handgun. The men decided to commit a burglary, and Eric drove to an alley near Ms. Rhodes's house. Eric and Depue knew Ms. Rhodes because they used to live next door to her and did odd jobs for her on occasion. Eric dropped the other three men off, and drove around until Joseph called him to come back to the alley to pick them up. According to Eric, when he got to the alley, the three were jumping over a fence. Eric testified Depue had the gun, and when asked what happened, Depue said "he just shot." Later, Depue told Eric that Daniel had handed him the gun after telling him someone was coming, and thereafter he "just shot" when he heard a noise. When he got to the car, Daniel had a laptop computer with him and put it in the trunk. The men also had several rifles and put those into the trunk as well. Eric then drove back to his aunt's house and unloaded the rifles and the computer from the trunk. Later, Eric sold the laptop for $200.00 and drugs, and sold the rifles for $400.00-$500.00.

Eric stated the men found out the police were looking for Daniel. They planned to raise money and leave town. However, Eric was arrested for a parole violation. While in custody, Eric gave a statement about the events at the Rhodes house.

Depue also testified at trial. He corroborated Eric's testimony that Eric was the driver of the car, Eric dropped the other men off in the alley, and the plan was to break into a house to obtain money. Depue also admitted he knew Daniel took a handgun into the house. In his videotaped statement to police, which was admitted during trial, Depue admitted he was at the scene to commit a burglary and knew about the handgun. However, in his statement he said he left the house before

the murder because he did not want to commit a burglary at Ms. Rhodes's home.

## DISCUSSION

In three points of error, Depue raises claims of charge error. More specifically, Depue contends: (1) the trial court erred in refusing his request for an instruction on the affirmative defense of renunciation, (2) the charge permitted his conviction on proof different from, and less than, that required to prove the allegation in the indictment, and (3) he was denied his right to a unanimous verdict because of charge error.

### *Renunciation*

Depue first contends the trial court erred when it refused his request for a defensive instruction on renunciation. A trial court is required to give a jury instruction on every defensive theory raised by the evidence whether it is strong, feeble, impeached, or contradicted, and even if the trial court believes the testimony is not credible. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). A charge on a defensive issue is required if the accused presents affirmative evidence that would constitute a defense to the crime charged and a jury charge is properly requested. *McGarity v. State*, 5 S.W.3d 223, 226 (Tex. App.—San Antonio 1999, no pet.). If the defendant produces evidence on each element of a requested defense, he is entitled to an instruction. *Id.*; *see* TEX. PENAL CODE ANN. § 2.04(c) (Vernon 2003) (stating that issue of existence of affirmative defense is not submitted to jury unless evidence is admitted to support it). In fact, a charge on a defensive issue is required if it is raised by the defendant's testimony alone or otherwise. *McGarity*, 5 S.W.3d at 226. The refusal to submit a requested defensive instruction is reviewed under the abuse of discretion standard. *Id.* When the defendant fails to present evidence on each element of the requested defensive issue, there is no error in refusing to submit the defensive issue. *Id.* at 227.

If the appellate court determines the trial court erred regarding the jury charge, it must then evaluate the harm caused by the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) If there was no objection in the trial court and the alleged error is raised for the first time on appeal, the appellant must show egregious harm to obtain relief. *Id.* If error is preserved in the trial court, the appellant need only show some harm. *Id.* Harm is determined by reviewing the entire charge, the state of the evidence, arguments of counsel, and any other relevant information shown by the record. *Id.*

Depue concedes renunciation does not apply to offenses outside of Chapter 15 of the Texas Penal Code. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000); TEX. PENAL CODE ANN. § 15.04(b) (stating renunciation is affirmative defense to prosecution for conspiracy and criminal solicitation). And, admittedly he was charged was capital murder under Chapter 19 of the Penal Code. He argues, however, he was nevertheless entitled to a renunciation instruction because the jury charge included a definition of conspiracy from section 15.02 of the Penal Code, and the application portion of the charge states:

> Or, if you find from the evidence beyond a reasonable doubt that Jonathan Depue entered into a conspiracy with Eric Depue, Joseph Montoya, Jesse Martinez, Jr., and/or Ruben Montoya to commit the felony offense of burglary and that on or about the 29th day of September, 2006, in Bexar County, Texas, in an attempt to carry out this conspiracy to commit burglary, Jonathan Depue intentionally caused the death of an individual, namely: Aleta Rhodes, by shooting Aleta Rhodes with a deadly weapon, namely: a firearm, and Jonathan Depue was in the course of committing or attempting to commit the offense of burglary of a habitation upon Aleta Rhodes, and that such offense was committed in furtherance of the unlawful purpose to commit burglary and was an offense that should have been anticipated as a result of carrying out the conspiracy to commit burglary;

> Then you will find the defendant guilty of capital murder as charged in the indictment.

The State counters by citing *Wesbrook*, and arguing Depue was indicted for capital murder, not conspiracy, and therefore Depue was not entitled to a renunciation instruction. The State argues alternatively that even if renunciation was legally available to Depue, he was not entitled to have the defense submitted because he did not submit evidence entitling him to the defense.

Assuming without deciding that the defense of renunciation was legally available to Depue under the circumstances of this case, we must determine if he presented evidence entitling him to the submission. To determine if the defensive issue of renunciation was raised, we view the evidence in light of the statutory provision. *McGarity*, 5 S.W.3d at 227. The Texas Penal Code provides that with regard to conspiracy, the defense of renunciation is available when there is evidence to show the defendant voluntarily and completely renunciated his criminal objective by withdrawing from the conspiracy "before commission of the object offense and took further affirmative action that prevented the commission of the object offense." TEX. PENAL CODE ANN. § 15.04(b).

Contrary to Depue's assertion, the jury charge refers to a conspiracy to commit burglary, not capital murder. Accordingly for purposes of renunciation, burglary is the criminal objective from which Depue must have withdrawn and taken affirmative action to prevent. *See id.* To establish he presented evidence to support the submission of renunciation, Depue points to the videotaped statement he gave to police, which was admitted as State's exhibit thirteen. We have reviewed the videotaped statement, and Depue made the following admissions:

1. He was part of a group of men who agreed to burglarize a house to "make some fast cash."

2. The group drove around, saw a house that looked empty, and picked it for the

burglary. Depue denied they picked the house because he knew Ms. Rhodes was an elderly woman living alone.

3. Three of the men, including Depue, were dropped off down the street from the Rhodes house, entered the alley behind the house, jumped the fence into the backyard, and broke the glass door at the back of the house to gain entry.

4. Although he initially denied knowing anyone had a gun, Depue ultimately admitted he knew Daniel Montoya had the gun when they were in the car and saw Daniel take the gun inside the house.

5. All three men entered the house. Depue "touched stuff," "grabbed stuff here and there," and moved the bed.

6. He got scared and left. He said he could not go through with it. He claimed he left before Ms. Rhodes came home.

The issue before this court is not whether Depue's testimony is true, but rather whether, if the testimony is believed, an issue of renunciation has been raised. *See Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984). Depue's statement, even if taken as true, does not raise evidence entitling him to renunciation with regard to the burglary. "Burglary" is defined in the Penal Code as entering a habitation or building without the owner's consent with the intent to commit a felony, theft, or assault. TEX. PENAL CODE ANN. § 30.02. Based on Depue's statement, by the time he "got scared" and left the Rhodes home, the burglary was complete. *See id.* Thus, his statement does not show renunciation with regard to burglary or conspiracy to commit burglary.

Even if we accept Depue's contention that the object offense was the murder as opposed to the burglary, there is nothing in Depue's statement to show he took affirmative action to prevent its commission – by his own admission, he merely left the scene, nothing more. *See Wesbrook*, 29 S.W.3d at 122; TEX. PENAL CODE ANN. § 15.04(b). Accordingly, we overrule Depue's first point of error.

### *Conviction of Proof Different From, and Less Than, That Required by Indictment*

In his second point, Depue claims the trial court's charge was "fatally and fundamentally flawed" because it allowed the jury to convict him on proof different from, and less than, that authorized by the indictment. This argument, as the one asserted in his first point, relates to the trial court's inclusion of conspiracy language in the jury charge.

The indictment, by which Depue was charged with capital murder, stated:

> [O]n or about the 29th Day of September, 2006, JONATHAN DEPUE, hereinafter referred to as defendant, did intentionally cause the death of an individual, namely: Aleta Rhodes, by SHOOTING ALETA RHODES WITH A DEADLY WEAPON, NAMELY: A FIREARM, and the defendant was in the course of committing and attempting to commit the offense of BURGLARY OF A HABITATION upon Aleta Rhodes[.]

*See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2009). Capital murder, in the context of this case, is defined as follows:

> (a) A person commits an offense if he commits murder as defined under Section 19.02(b)(1)[1] and:
>
>        *     *     *
>
>     (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat . . .

*Id.*

The application paragraph of the jury charge for the guilt/innocence phase of the trial stated:

> Now, if you find from the evidence beyond a reasonable doubt that on or

---

[1] A person commits the offense of murder as defined by section 19.02(b)(1) of the Penal Code if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003).

about the 29th day of September, 2006, in Bexar County, Texas, the defendant, Jonathan Depue, either acting alone or together with Eric Depue, Joseph Montoya, Jesse Martinez, Jr., and/or Ruben Montoya as a party, did intentionally cause the death of an individual, namely: Aleta Rhodes, by shooting Aleta Rhodes with a deadly weapon, namely: a firearm, and Jonathan Depue, either acting alone or together with Eric Depue, Joseph Montoya, Jesse Martinez, Jr., and/or Ruben Montoya as a party, was in the course of committing or attempting to commit the offense of burglary of a habitation upon Aleta Rhodes;

Or, if you find from the evidence beyond a reasonable doubt that Jonathan Depue entered into a conspiracy with Eric Depue, Joseph Montoya, Jesse Martinez, Jr., and/or Ruben Montoya to commit the felony offense of burglary and that on or about the 29th day of September, 2006, in Bexar County, Texas, in an attempt to carry out this conspiracy to commit burglary, Jonathan Depue intentionally caused the death of an individual, namely: Aleta Rhodes, by shooting Aleta Rhodes with a deadly weapon, namely: a firearm, and Jonathan Depue was in the course of committing or attempting to commit the offense of burglary of a habitation upon Aleta Rhodes, and that such offense was committed in furtherance of the unlawful purpose to commit burglary and was an offense that should have been anticipated as a result of the carrying out of the conspiracy to commit burglary;

Then you will find the defendant guilty of capital murder as charged in the indictment.

If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty of capital murder and next consider whether he is guilty of the lesser included offense of murder.

Based on the language in the indictment, section 19.03(a)(2), and the application paragraph, Depue argues that although the application paragraph correctly contained information concerning Depue's actions as a party to the charged offense pursuant to section 7.01 of the Penal Code, it also contained improper conspiracy language, allowing the jury to convict Depue for capital murder based on the offense of conspiracy as defined in section 15.02 of the Penal Code, a crime for which he was not indicted. *See* TEX. PENAL CODE ANN. § 7.01 (Vernon 2003) (stating person is criminally responsible as party to offense if offense is committed by his own conduct, conduct of another for

which he is criminally responsible, or both). Depue recognizes that under section 7.02 of the Penal Code, a person can be criminally responsible for the conduct of another, but contends the charge in this case went beyond that and improperly charged a separate offense, i.e., conspiracy under section 15.02 of the Penal Code, which allowed the jury to convict Depue on proof different from, and less than, that authorized by the indictment. Depue contends that by defining "conspiracy" as it is defined in section 15.02, the trial court went beyond a mere parties charge. We hold Depue is incorrect.

Section 7.02 of the Penal Code is entitled "Criminal Responsibility for Conduct of Another." *See id.* § 7.02. Subsection (b) of section 7.02 provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy.

*Id*. § 7.02(b). The State argued, in response to Depue's objection to the conspiracy language in the application paragraph of the charge, that the language was proper because it tracked section 7.02(b) and was a proper parties charge. The State makes the same argument here.

*Montoya v. State* is dispositive of this point. 810 S.W.2d 160 (Tex. Crim. App. 1989) (en banc). In that case, the indictment alleged Montoya and another man "unlawfully, intentionally, and knowingly cause[d] the death of John E. Kilheffer, the deceased, by stabbing the deceased with a knife, . . . and the said defendants were then and there in the course of committing and attempting to commit the offense of robbery of John E. Kilheffer, . . ." *Id*. at 164. The indictment said nothing about a conspiracy. *See id.* Nevertheless, the application portion of the court's jury charge tracked the language of section 7.02(b) and contained the definition of conspiracy from section 15.02 of the

Penal Code. *Id.* After he was convicted of capital murder, Montoya asserted the same argument made by Depue in this case – "the inclusion of the theory of conspiracy in the court's charge over his objection constituted fundamental error because the offense of conspiracy had not been alleged in the indictment." *Id.* at 165.

On petition for discretionary review, the court of criminal appeals held Montoya was mistaken in his argument because the charge did not instruct the jury to consider whether he was guilty of the separate offense of criminal conspiracy found in section 15.02 of the Penal Code. *Id.* Rather, the charge "merely contained an alternative 'parties' charge" as provided in section 7.02(b). *Id.* The court held it was "well accepted" that the law of parties can be applied to a case even if there is no allegation in the indictment regarding parties. *Id.* (citing *English v. State*, 592 S.W.2d 949 (Tex. Crim. App. 1980); *Pitts v. State*, 569 S.W.2d 898 (Tex. Crim. App. 1978)). This rule applies to the law of parties as found in section 7.02(a) and 7.02(b) of the Penal Code. *Montoya*, 810 S.W.2d at 165. The court then noted that the evidence as demonstrated by Montoya's confession supported a charge on criminal responsibility as set forth in section 7.02(b), and overruled Montoya's point of error. *Id.*

The indictment and application charge are nearly identical to that discussed by the court in *Montoya*. Depue, like *Montoya*, was indicted for capital murder. Although Depue's indictment said nothing about a conspiracy, the application portion of the charge included a parties charge from section 7.02(b) of the Penal Code and a definition of criminal conspiracy from section 15.02 of the Penal Code, just as *Montoya* did. *See id.* at 164-65. Moreover, Depue's statement, which was introduced into evidence by the State, supported the submission of a charge on criminal responsibility. Depue admitted that he and the others agreed to burglarize a home, jumped a fence

to enter the backyard of Rhodes's home, and entered her home by breaking in. He admitted he saw Daniel with the gun in the car, and admitted Daniel had the gun in his hand when they entered the house. This was sufficient to authorize a 7.02(b) parties charge. Accordingly, we overrule Depue's second point of error.

### *Unanimous Verdict*

Lastly, Depue contends the court's charge allowed the jury to "render a general verdict on capital murder without unanimously agreeing to which act the defendant was guilty of committing." Depue's argument is based on the fact that the indictment contained a general parties charge under section 7.02(a) and a conspiracy parties charge under section 7.02(b). Depue contends that because the jury was charged this way, it was improperly permitted to find the defendant guilty of capital murder as charged in the indictment, or guilty of conspiracy to commit capital murder, which was not charged in the indictment.

Unanimity is required under the Texas Constitution in felony cases and under the Texas Code of Criminal Procedure in all criminal cases. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006) (quoting *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005)); *see also* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a), 37.02, 37.03, 45.034-.036 (Vernon 2006 & Supp. 2009). In this context, unanimity means "each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745. In determining unanimity, the question is whether the jury charge submitted different offenses or simply alternate methods of committing the same offense. *See Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008). To answer this question, the court of criminal appeals has advised that we determine the focus or gravamen of the offense. *Id.* at 907.

In this case, Depue was charged with the offense of capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). The gravamen or focus of the offense was the murder of Ms. Rhodes during the commission of a burglary. *See Huffman*, 267 S.W.3d at 907. The jury charge simply authorized the jury to find Depue guilty of this single offense either personally or as a party under sections 7.02(a)(2) and 7.02(b). *See Garza Vega v. State*, 267 S.W.3d 912, 915-16 (Tex. Crim. App. 2008) (noting that hypothetically correct jury charge authorized jury to convict defendant of capital murder as party under section 7.02(a)(2) or section 7.02(b)). Thus, the charge permitted the jury to find alternative theories of party liability for the commission of the single criminal offense of capital murder. The jury charge did not authorize or permit the jury to return anything less than a unanimous verdict. We therefore overrule Depue's third point of error.

## CONCLUSION

Based on the foregoing, we hold Depue's points of error are without merit, and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish