Opinion issued January 13, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00602-CR

———————————

Jevorish Jevonta
Ford, Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 232nd District Court

Harris
County, Texas



Trial Court Case No. 1171503

 



 

MEMORANDUM OPINION

Appellant, Jevorish Jevonta Ford, was
charged by indictment with capital murder.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as
charged.  As the State did not seek the
death penalty, the trial court sentenced appellant to life imprisonment.  In three points of error, appellant (1)
challenges the sufficiency of the evidence to establish his identity as one of
the shooters and (2) argues that the trial court abused its discretion in
overruling appellant’s request for a self-defense instruction to be included in
the jury charge.

We affirm.

                                                                                                                                                                
Background

Michael Johnson was at his computer in his apartment on
the morning of June 7, 2008 when he heard gunshots outside.  He looked out his window and saw a black male
in the parking lot of the apartment complex fire approximately three shots from
his gun, aiming towards the fence line of the apartment complex.  The shooter walked over to some cars and bent
down to pick something up.  Johnson then
noticed that there was a body lying where the shooter was standing.  The shooter walked over to a blue Ford
Expedition, got in the vehicle, and drove away.

Johnson then observed another black male walking in the parking
lot, heading towards a gray Dodge Intrepid. 
That man got into the car and followed the Ford Explorer away from the
scene.  Johnson’s son’s binoculars were
in the room.  Johnson grabbed them,
looked at the Dodge Intrepid, and saw the license plate number.  He wrote the number down and later gave it to
one of the investigating officers, Sergeant S. Miller.

After the two cars left, Johnson saw the person he had
seen lying between the cars, decedent Eduardo Arriaga, stand up.  Arriaga pulled out his cell phone and made a
call.

Kristina Andrus was cleaning her apartment on the same
morning.  While cleaning, she heard shots
outside.  After waiting a moment, she
went outside to investigate.  As she
reached the parking lot, she saw Arriaga making a call on his cell phone.  She saw blood coming from Arriaga’s ear.  At this point, a gray Dodge Intrepid drove up
near Arriaga.  Andrus saw the driver come
to a stop, lean out of the car, and say to Arriaga, “Why are y’all doing this?
What are y’all doing?”  Andrus turned
around to leave and heard shots fired. 
She ran back to her apartment and called 9-1-1.  Some minutes later, Andrus left her apartment
again.  She found Arriaga sitting on the
ground, bleeding from the chest.

Deputy D. Willis, an officer for the Harris County
Sherriff’s Department, was the first officer on the scene.  He approached Arriaga and asked him who had
shot him.  Arriaga responded, “Roderick
did it.”

By this time another person had been located by the fence
where the first shooter had aimed.  This
person, decedent Van Lee Guzman, was dead when Deputy Willis arrived.  Arriaga was life flighted away from the
scene.  He died later at the hospital.

Some time later, Andrus was shown a photo array to see if
she could identify the driver of the Dodge Intrepid.  Andrus identified Roderick Carpenter.

In the course of the investigation, Sergeant Miller spoke
to Demontrion Blackmon, appellant’s roommate at the time.  Blackmon told Sergeant Miller that, on the
morning of the shooting, he saw appellant leave the apartment and get into a
gray Dodge Intrepid with Carpenter. 
Blackmon also said that he had spoken to appellant the day after the
shooting and that appellant said he had shot someone.  Appellant did not give details to Blackmon
but said that “either it was me or him,” that he would rather people visit him
in jail than see him at his funeral, and that “I didn’t know what to do so I
shot him.”

Sergeant Miller also spoke with appellant’s brother, Andre
Ford.  Appellant told Andre that he and
Roderick went to do a drug deal and that he shot some Mexicans, one in the head
and one in the back.  The description of
the shots is consistent with the injuries sustained by Arriaga and Guzman.  Additionally, two shoe boxes containing
cocaine were located in Guzman’s car, which was located at the scene of the
crime.

Appellant also told Andre that he shot them because
“something was not right,” “the Mexicans were hesitating,” and he and Roderick
“felt like the Mexicans [were] about to do them in by shooting them and
tak[ing] their money.”  Appellant said
that “he took one of the Mexicans [sic] truck and drove it over to the east
side of town and left it there.”

A blue Ford Expedition owned by Arriaga was found away
from the apartment complex.  The interior
was ripped up and papers were scattered throughout the car.  Fire and smoke damage established that
someone had set fire to the car, but the fire did not consume the car.  Appellant’s fingerprints were found on three
of the papers found inside the car.

Both Blackmon and Andre provided appellant’s cell phone
number to Sergeant Miller.  Carpenter’s
cell phone records were also obtained in the investigation.  The records for Carpenter’s cell phone
established that his cell phone was communicating with a certain cell phone
tower during the time of the incident. 
The apartment complex where the shooting took place was in the range of
this cell phone tower. Carpenter’s cell phone records show that Carpenter was
communicating with appellant and Arriaga before and around the time of the
shooting.  Around the time of the
shooting, appellant sent Carpenter a text message saying, “Want me to do
it.”  Thirty-four seconds later, Roderick
responded, “Make da move down them.” 
Arriaga’s phone records reflect that, less than a minute later, Arriaga
made a call to 9-1-1.

Appellant was arrested and charged on June 25, 2009.  At trial, appellant asked for a jury
instruction of self defense to be included in the charge submitted to the
jury.  The State objected to the inclusion,
arguing that there was insufficient evidence presented to warrant an
instruction on self defense.  The trial
court agreed and denied the request.

                                                                                                                                   
Sufficiency of the Evidence

In his first two points of error, appellant argues that
the evidence is legally and factually insufficient to prove that he was one of the
shooters.

A.              
Standards of Review and Applicable Legal
Principles

1.                
Sufficiency of the Evidence Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying
the same standard of review, regardless of whether an appellant presents the
challenge as a legal or a factual sufficiency challenge.  See Ervin
v. State, No. 01–10–00054–CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston
[1st Dist.] Nov. 10, 2010, pet. filed) (construing majority holding of Brooks v. State, 323 S.W.3d 893, 912,
924–28 (Tex. Crim. App. 2010)).  This standard of review is the standard
enunciated in Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 
See id.  Pursuant to this standard, evidence is
insufficient to support a conviction if, considering all the record evidence in
the light most favorable to the verdict, no rational fact finder could have
found that each essential element of the charged offense was proven beyond a reasonable
doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; In re Winship, 397 U.S. 358, 361, 90 S. Ct.
1068, 1071 (1970); Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under
the Jackson standard in two
circumstances: (1) the record contains no evidence, or merely a “modicum” of
evidence, probative of an element of the offense, or (2) the evidence
conclusively establishes a reasonable doubt.  See
Jackson, 443 U .S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11,
2789; see also Laster, 275 S.W.3d at
518; Williams, 235 S.W.3d at 750. 

The sufficiency-of-the-evidence
standard gives full play to the responsibility of the fact finder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793.  In viewing the record, direct and
circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Clayton,
235 S.W.3d at 778.  Finally, the
“cumulative force” of all the circumstantial evidence can be sufficient for a
jury to find the accused guilty beyond a reasonable doubt.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

2.                
Capital Murder

A person commits capital murder if he intentionally or
knowingly causes the death of more than one individual during the same criminal
transaction.  Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003),
§ 19.03(a)(7)(A) (Vernon Supp. 2010). 
“A person acts intentionally . . . when it is his conscious
objective or desire to engage in the conduct or cause the result.”  Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003).  “A person acts knowingly . . . when
he is aware that his conduct is reasonably certain to cause the result.”  Id.
§ 6.03(b).

B.              
Analysis

Appellant argues that this Court should take into account
three considerations in determining whether the evidence was sufficient to establish
appellant was one of the shooters: (1) none of the witnesses to the crime
identified appellant as one of the shooters; (2) there is evidence that another
person was at the scene of the crime; and (3) there is no evidence to connect
appellant with any attempt to possess cocaine. 
First, we will review the record for evidence supporting the identity of
appellant as one of the shooters.

The morning of the shooting, appellant was seen getting
into a gray Dodge Intrepid with Carpenter. 
Carpenter was identified, by an eyewitness at the scene of the crime,
getting into in a gray Dodge Intrepid. 
Arriaga, one of the complainants in the case, identified Carpenter as
one of the shooters.

After the shooting, appellant told his then-roommate that
he had shot someone.  Appellant also told
his brother that he and Roderick went to do a drug deal and that he shot some
Mexicans, one in the head and one in the back. 
The description of the shots is consistent with the injuries sustained
by Arriaga and Guzman.  Additionally, two
shoe boxes containing cocaine were located in Guzman’s car, which was located
at the scene of the crime.

The records for Carpenter’s cell phone established that
his cell phone was communicating with a certain cell phone tower during the
time of the incident.  The apartment
complex where the shooting took place was in the range of this cell phone
tower. Carpenter’s cell phone records show that Carpenter was communicating
with appellant and Arriaga before and around the time of the shooting.  Around the time of the shooting, appellant
sent Carpenter a text message saying, “Want me to do it.”  34 seconds later, Roderick responded, “Make
da move down them.”  Arriaga’s phone
records reflect that, less than a minute later, Arriaga made a call to 9-1-1.

Appellant also told his brother, Andre, that “he took one
of the Mexicans [sic] truck and drove it over to the east side of town and left
it there.”  A blue Ford Expedition owned
by Arriaga was found away from the apartment complex.  The interior was ripped up and papers were
scattered throughout the car.  Fire and
smoke damage established that someone had attempted to set fire to the car, but
the fire did not consume the car.  Appellant’s
fingerprints were found on three of the papers found inside the car.

Appellant argues that the evidence is insufficient to
support a finding that he was one of the shooters because none of the eyewitnesses
to the crime identified him as one of the shooters.  The identity of the accused as the
perpetrator, however, may be proved by direct or circumstantial evidence, or by
inferences drawn from such evidence.  Gardner v. State, 306 S.W.3d 274, 285
(Tex. Crim. App. 2009). An eyewitness identification is not required so long as
other direct or circumstantial evidence exists. 
See id.  

Appellant also argues that there is evidence that another
person was at the scene of the crime. 
Appellant argues that, because there was evidence that other people may
have been present during the shooting, the other person may have committed the
murder and appellant may have been simply a passenger in the Ford
Expedition.  Even assuming there was
sufficient evidence in the record to suggest that another person may have been
present, there is also evidence in the record that appellant admitted to being
one of the shooters.  It was within the
jury’s discretion to believe the testimony that appellant admitted to being one
of the shooters.  See Jackson, 443 U.S. at 319 (holding it is
responsibility of jury to fairly resolve conflicts in testimony, to weigh
evidence, and to draw reasonable inferences from facts); Williams, 235
S.W.3d at 750 (same).

Finally, appellant argues that there is no evidence to connect
appellant with any attempt to possess cocaine. 
Appellant was charged with capital murder by intentionally or knowingly
causing the death of more than one individual during the same criminal
transaction.  See Tex. Penal Code Ann. § 19.02(b)(1),
§ 19.03(a)(7)(A).  Possessing or
attempting to possess cocaine is not an element of capital murder as alleged in
appellant’s indictment.  Accordingly,
whether appellant attempted to possess cocaine is not relevant to the jury’s
finding of guilt.

We overrule appellant’s first two points of error.

                                                                                                                        
Jury Instruction on Self Defense

In his third point of error, appellant argues that the
trial court erred by denying his request for an instruction in the charge on
self defense.

A.              
Standard of Review

If evidence raises the issue of self defense, the
defendant is entitled to have it submitted to the jury, whether that evidence
is weak or strong, unimpeached or contradicted, and regardless of what the
trial court may or may not think about the credibility of the defense.  Hamel v.
State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).  “[A] defense is supported (or raised) by the
evidence if there is some evidence, from any source, on each element of the
defense that, if believed by the jury, would support a rational inference that
that element is true.”  Shaw v. State, 243 S.W.3d 647, 657–58
(Tex. Crim. App. 2007).  However, “[i]f a
jury were instructed as to a defense even though the evidence did not
rationally support it, then the instruction would constitute an invitation to
the jury to return a verdict based on speculation.”  Id.
at 658.

The defendant’s testimony alone may be sufficient to raise
the defensive theory requiring a charge.  Hayes v.
State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); Dyson, 672 S.W.2d at 463; Warren
v. State, 565 S.W.2d 931, 934 (Tex. Crim. App. 1978).  In determining whether the testimony of a
defendant raises an issue of self-defense, the truth or credibility of the
defendant’s testimony is not at issue.  Rodriquez v. State, 544 S.W.2d 382, 383
(Tex. Crim. App. 1976); Guilbeau v. State,
193 S.W.3d 156, 159 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  A reviewing court must view the evidence or
testimony in a light most favorable to the appellant.  Dyson,
672 S.W.2d at 463.  If such testimony or
other evidence viewed in a favorable light does not establish a case of self defense,
an instruction is not required.  Id. 


B.              
Analysis

As it would apply in this case, a person is justified in
using deadly force in self defense:

(1)     if
the actor would be justified in using force against the other under Section
9.31; and

(2)     when
and to the degree the actor reasonably believes the deadly force is immediately
necessary:

(A)    to protect the actor against the other’s use
or attempted use of unlawful deadly force . . . .

Tex. Penal
Code Ann. § 9.32(a) (Vernon Supp. 2010). 
The State argues that appellant did not present any evidence that his
belief that deadly force was necessary was reasonable.  We agree.

When he spoke to the police, Blackmon said that he had
spoken to appellant the day after the shooting and that appellant said he had
shot someone.  Appellant did not give
details to Blackmon but said that “either it was me or him,” that he would
rather people visit him in jail than see him at his funeral, and that “I didn’t
know what to do so I shot him.”

Appellant’s brother, Andre, also spoke to the police.  Andre told the police that Appellant told him
that he shot the two men because “something was not right,” “the Mexicans were
hesitating,” and he and Roderick “felt like the Mexicans [were] about to do
them in by shooting them and tak[ing] their money.”

Appellant relies on these statements for proof that he was
acting in self defense.  All but one of
these statements relate to appellant’s subjective state of mind.  These statements show that appellant believed
deadly force was necessary.  The only
statement that does not relate to appellant’s subjective state of mind is the
statement “the Mexicans were hesitating.”

“[A] defense is supported (or raised) by the evidence if
there is some evidence, from any source, on each element of the defense that,
if believed by the jury, would support a rational inference that that element
is true.”  Shaw, 243 S.W.3d at 657–58. 
The statement that “the Mexicans were hesitating” does not support a
rational inference by the jury that appellant’s belief that deadly force was
necessary was reasonable.  See Tex.
Penal Code Ann. § 9.32(a)(2) (requiring proof that belief deadly force
is immediately necessary be reasonable). 
No other evidence in the record offers any justification for the
reasonableness of appellant’s belief that deadly force was necessary.  Including an instruction on self defense,
then, would have “constitute[d] an invitation to the jury to return a verdict
based on speculation.”  Id. at 658.  We hold that the trial court did not err in
overruling appellant’s request to have a jury instruction on self defense
included in the charge.

We overrule appellant’s third point of error.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Keyes, Higley, and Bland.

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 19.02(b)(1)
(Vernon 2003), § 19.03(a)(7) (Vernon Supp. 2010).